**Thanh Cuong NGO, Appellant,**

v.

**The STATE of Texas.**

No. PD–0504–04.

Court of Criminal Appeals of Texas, En Banc.

March 16, 2005.

Elizabeth L. Derieux, Longview, for Appellant.

Donald W. Rogers, Jr., Assist. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON and HOLCOMB, J.J., joined.

Appellant was charged with credit card abuse under section 32.31 of the Texas

Penal Code. The indictment contained three paragraphs, alleging three separate criminal acts—stealing a credit card, receiving a stolen credit card, and fraudulently presenting a credit card to pay for goods or services. The three application paragraphs in the jury charge permitted the jury to convict appellant if some of the jurors found that he stole the credit card, others believed he received a stolen credit card, and still others thought that he fraudulently presented it. The Eastland Court of Appeals held that this jury charge "did not require that the jurors unanimously agree upon any one of the three alternate theories," and thus, it violated both the Texas Constitution and state statutes which require a unanimous jury verdict.[1] The court of appeals further found that, although appellant affirmatively stated that he had "no objection" to the jury charge, this error was reversible under *Almanza*[2] because appellant suffered "egregious harm." [3] We granted the State's petition for discretionary review to determine the correctness of that decision.[4] Because we agree with the court of appeals' reasoning and result, we affirm its judgment.

1. *Ngo v. State*, 129 S.W.3d 198, 200 (Tex. App.-Eastland 2004).

2. *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1985).

3. *Ngo*, 129 S.W.3d at 202.

4. We granted both of the State's grounds for review:
 1) The court below erroneously held that appellant's trial counsel's affirmative statement that there was no objection to the court's charge did not forfeit or waive appellant's right to fundamental error review of the court's charge under *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985).
 2) The court below erroneously determined contrary to and in conflict with prior decisions of this Court and the Supreme Court of the United States that appellant was de-

## I.

The evidence at trial showed that, on December 13, 2002, appellant went to a karaoke bar in Houston around 11 p.m. and ordered a couple of beers. He gave Hanh Nguyen, the Vietnamese manager of the bar, a credit card. The name on the credit card was Hong Truong. Mr. Nguyen was immediately suspicious because "Hong" is a woman's name, and, serendipitously enough, "Hong Truong" is the name of Mr. Nguyen's ex-wife. Mr. Nguyen immediately called his ex-wife and asked her to come down to the bar. Meanwhile, appellant pulled out a large stack of credit cards, as well as an HMO and dental plan card, all in the name of Hong Truong, and asked: "Which one of these can I use?" Mr. Nguyen declined to take any of them, and appellant sat quietly finishing his beer.

Mr. Nguyen told his security guard to call the police. They arrived at about the same time as Hong Truong. She told her ex-husband and the policeman that all of her credit cards had been stolen when her apartment was burglarized a few weeks earlier. She had come home from visiting her sick grandfather in the hospital on

nied his right to a unanimous verdict when the trial court disjunctively submitted the State's theories of conviction alleged in the indictment to the jury in its charge at the guilt-innocence stage of the trial with a general verdict form, where each of the alleged theories of conviction were not separate offenses, as found by said appellate court, but merely alternative means of committing the offense of credit card abuse as defined by Section 32.31(b) of the Penal Code.

In its Brief on the Merits, the State abandoned its first ground for review as that very issue had, in the meantime, been resolved adversely to the State in *Bluitt v. State*, 137 S.W.3d 51 (Tex.Crim.App.2004). We therefore dismiss the State's first ground for review and address only the second issue.

Thanksgiving Day and found that the lock on her window had been broken and her apartment ransacked. All of her credit cards had been in a purse in her bedroom closet. As far as she knew, none of the cards had been used after the burglary because she had called and canceled them. Ms. Truong identified the credit card that appellant had given to Mr. Nguyen as one of her credit cards that had been stolen during the burglary.

Ms. Truong had seen appellant around her apartment complex several times. He had knocked on her door before, but she did not open the door for him because she had a small child. Appellant had also asked her for money. He made her nervous.

Appellant testified that he had come to America from Vietnam and had lived here for eleven years, but he did not speak much English. He worked on a shrimp boat. He said that his friend Mike gave him the credit cards while they were playing pool. Mike wanted appellant to give the credit cards to Mr. Nguyen, so appellant waited at the bar until Mr. Nguyen came in. Meanwhile, he bought a beer and paid for it with cash. He insisted that he did not try to use a credit card to pay for the beer. "I don't know about credit card because I'm from Vietnam. I never use credit card. I know nothing about

credit card." He denied burglarizing Ms. Truong's apartment or stealing any of her credit cards. He did admit to having a prior burglary conviction.

The application paragraphs of the jury charge instructed the jury to find appellant guilty if it concluded that he committed credit card abuse by any one of three separate acts.[5] Appellant's counsel stated that he had no objection to the jury charge.

The prosecutor told the jury during his closing argument that the jury charge did not require that the jurors unanimously agree upon any one of the three alternate theories:

> You know what? I have all the ways that we can prove it. You know, he even testified that, you know, he received the card from someone else.
>
> I don't know how, you know—*I don't know if I proved all three or one or two or all—I have no idea.* You know, what I do know is that for sure the credit card, he had no right to use it. That's clear. And that he tried to present it and it was presented to Mr. Nguyen. And he was trying to get something for it. That's clear. That's how simple this is. (emphasis added).

The jury returned a general guilty verdict and sentenced appellant to two years in a state jail facility, plus a $3500 fine.

---

5. The application paragraphs read:

> Now, if you find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, did then and there unlawfully, intentionally or knowingly steal a credit card owned by the card holder, Hong Truong, with intent to deprive the cardholder of the property and without the effective consent of the cardholder; *or*
>
> If you find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, did then and there unlawfully and knowingly receive with intent to use a credit card

> owned by card holder, Hong Truong, knowing the credit card had been stolen; *or*
>
> If you find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, with intent to obtain a benefit fraudulently, did use or present to [H]anh Nguyen a credit card knowing the use was without the effective consent of the cardholder, Hong Truong, namely without consent of any kind, and knowing that the credit card had not been issued to the defendant, *then you will find [appellant] guilty as charged in the indictment.*
>
> (Emphasis added).

In his sole point of error on appeal, appellant argued that his constitutional and statutory right to a unanimous jury verdict was violated "by the disjunctive submission in the jury charge of two or more separate offenses." [6] First, the court of appeals, presciently anticipating this Court's decision in *Bluitt v. State*,[7] concluded that it could address the merits of appellant's complaint even though he had affirmatively said he had no objection to the jury charge.[8] Second, the court of appeals held that the trial court erred in submitting the three separate offenses set out in application paragraphs of the jury charge in the disjunctive because such a charge would allow for a non-unanimous jury verdict.[9] Third, it concluded that this error was "egregious" under *Almanza* "because it deprived appellant of his right to a unanimous jury verdict and, thus, denied appellant a fair and impartial trial." [10] The court of appeals reversed the judgment of the trial court and remanded the case for a new trial.

## II.

In its petition for discretionary review, the State contends that the court of appeals erred in finding that appellant was denied his right to a unanimous verdict. First, it argues that the application paragraphs merely set out alternate means of committing a single offense of credit card abuse, but those paragraphs did not allege separate credit card abuse offenses. Second, the State argues alternatively that the application paragraphs "merely showed repeated instances of commission of the offense of credit card abuse." Because appellant failed to request the State to elect which single offense it would rely upon for conviction, it was permissible to submit the three separate offenses in the disjunctive. Each juror could then decide which of the three criminal acts it thought the State had proven and return a general verdict so long as all of the jurors unanimously agreed that he had committed the general offense of credit card abuse. In sum, according to the State, there was no error, much less egregious harm.

 Our first duty in analyzing a jury-charge issue is to decide whether error exists.[11] Then, if we find error, we analyze that error for harm.[12] Preservation of charge error does not become an issue until we assess harm.[13] The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection.[14] Under *Almanza*, jury charge error requires reversal when the defendant has properly objected to the charge and we find "some harm" to his rights.[15] When the defendant fails to ob-

6. 129 S.W.3d at 199.

7. 137 S.W.3d 51, 53 (Tex.Crim.App.2004) ("[w]e hold that an affirmative denial of objection, as in this case, shall be deemed equivalent to a failure to object. An appellant may raise such unobjected-to charge error on appeal, but may not obtain a reversal for such error unless it resulted in egregious harm").

8. *Ngo*, 129 S.W.3d at 199 ("we fail to see any meaningful distinction, in the context of *Almanza*, between a failure to object and an affirmative approval of the jury charge").

9. *Id.* at 201.

10. *Id.* at 202.

11. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App.2003) (*citing Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex.Crim.App. 1996)).

12. *Middleton*, 125 S.W.3d at 453.

13. *Id.*

14. *Id.* (*citing Hutch*, 922 S.W.2d at 171).

15. *Almanza*, 686 S.W.2d at 171; *see also Hutch*, 922 S.W.2d at 171.

ject or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant.[16] Thus, we review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal.[17] We turn first to the question of error.

## A. Error existed in this jury charge because it allowed for a non-unanimous jury verdict.

The indictment charging appellant with credit card abuse under section 32.31 of the Penal Code alleged three statutorily different criminal acts:

1) stealing a credit card owned by Hong Truong; [18]

2) receiving a credit card owned by Hong Truong, knowing that it had been stolen, and acting with the intent to use it; [19]

3) presenting a credit card with the intent to obtain a benefit fraudulently, knowing the use was without the ef-

fective consent of the cardholder, Hong Truong.[20]

The State charged all three offenses in three separate paragraphs within a single count of one indictment. It sought one conviction for the commission of one credit card abuse offense by proving any of three different criminal acts, occurring at three different times, and in three different ways.

 When the State charges different criminal acts, regardless of whether those acts constitute violations of the same or different statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one of these criminal acts.[21] In this case, for example, all twelve members of the jury must unanimously agree that appellant did at least one of three different acts: either he stole Ms. Truong's credit card; or he received her credit card, knowing that it was stolen and intending to use it fraudulently; or he fraudulently presented her credit card with the intent to obtain a benefit.[22] In

---

**16.** *Bluitt,* 137 S.W.3d at 53; *Almanza,* 686 S.W.2d at 171.

**17.** *See Posey v. State,* 966 S.W.2d 57, 60 & n. 5 (Tex.Crim.App.1998).

**18.** TEX. PENAL CODE § 32.31(b)(4).

**19.** *Id.*

**20.** TEX. PENAL CODE § 32.31(b)(1)(A).

**21.** *Francis v. State,* 36 S.W.3d 121, 125 (Tex. Crim.App.2000) ("[t]he unanimity requirement is undercut when a jury risks convicting the defendant of different acts, instead of agreeing on the same act for a conviction") (citing *United States v. Holley,* 942 F.2d 916, 925 (5th Cir.1991)).

**22.** Based upon the record evidence, it is entirely possible that the jury could have found that appellant committed two of these criminal acts: he either burglarized Ms. Truong's

apartment and stole her credit cards himself or he obtained them from the original burglar, knowing that the cards belonged to someone else, *and* he also tried to use Ms. Truong's credit cards to pay for his beer. The State could have charged appellant with both of these credit card abuse offenses and obtained two convictions had it charged appellant in separate counts instead of separate paragraphs. *See* TEX.CODE CRIM. PROC. art. 21.24(b) ("[a] count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense"); *see also Francis v. State,* 36 S.W.3d at 126 (Womack, J., concurring) (stating that "[o]ur law allows only one offense to be charged in each paragraph of an indictment, information, or complaint. Here, the State, having chosen to plead only one paragraph, was required to elect one incident on which to rely. This requirement is not only essential to giving a defendant the requisite notice of the charge

this case, however, the word "unanimously" appeared only in the "boilerplate" section of the jury charge dealing with selection of the jury foreman:

> After you retire to the jury room, you should select one of your members as your Foreman. It is his or her duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto and signing the same as Foreman.

Here the jury could well have believed that they need only be unanimous about their "verdict" of guilty or not guilty of the general offense of credit card abuse. Indeed, this unanimity instruction is worse than saying nothing because it affirmatively supports the prosecutor's erroneous jury argument that the jurors need agree only on their ultimate general "verdict" of guilty, rather than specifying that they need to unanimously agree on any one of the three specific criminal acts set out in the jury charge.

Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases.[23] Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act. Stealing a credit card on Monday is not the same specific criminal offense as receiving a stolen credit card on Tuesday or presenting a stolen credit card to a bartender on Wednesday. Indeed, stealing a credit card at 9:00 a.m. on Monday is not the same specific criminal offense as receiving a stolen credit card at 9:00 a.m. on Monday. These are all credit card abuse offenses, to be sure, but they are not the same, specific credit card abuse criminal acts committed at the same time or with the same *mens rea* and the same *actus reus*.

The State is mistaken in its first argument that the trial court simply submitted a single "credit card abuse" offense with three different statutory manners and means. The phrase "manner or means" describes *how* the defendant committed the specific statutory criminal act. It does not mean that the State can rely upon a laundry list of different criminal acts and let the individual jurors take their pick on which each believes the defendant committed.[24] The State relies upon *Schad v. Ari-*

---

against which to defend, it helps assure that the jury's verdict will be unanimous") (footnote omitted).

In this case, the State affirmatively decided to seek only one conviction. It was certainly entitled to do so. But it can charge only one specific criminal offense in one paragraph; it cannot charge different violations of the same generic offense by the commission of different criminal acts in a single paragraph and then seek a non-unanimous general "credit card abuse" guilty verdict. *See Schad v. Arizona*, 501 U.S. 624, 633, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) ("nothing in our history suggests that the Due Process Clause would permit a State to convict anyone under a charge of 'Crime' so generic that any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion, or littering, for example, would suffice for con-

viction"); *id.* at 651, 111 S.Ct. 2491 ("[w]e would not permit ... an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday, despite the 'moral equivalence' of those two acts")(Scalia, J., concurring).

**23.** *See Francis*, 36 S.W.3d at 126 (Womack, J., concurring) (citing Tex. Const. art. V, § 13; Tex.Code Crim. Proc. arts. 36.29(a), 37.02, 37.03, 45.034–45.036). The unanimity requirement is a complement to and helps in effectuating the "beyond a reasonable doubt" standard of proof. *See United States v. Gipson*, 553 F.2d 453, 457 n. 7 (5th Cir.1977).

**24.** A handy, though not definitive, rule of thumb is to look to the statutory verb defining the criminal act. That verb—such as steal, receive, or present—in section 32.31 of the

*zona,*[25] but that case does not support its argument, rather it holds that a jury must be unanimous on what specific criminal act the defendant committed. In *Schad,* the Supreme Court noted that the *actus reus* was "murder." All twelve jurors had to agree that the defendant committed that act. They did not need to be unanimous on the issue of whether the defendant murdered "with premeditation or in the course of committing a robbery."[26] The preliminary factual questions of premeditation or robbery go to "how" he committed the murder, not whether he committed the act of murder. As the Supreme Court explained:

> We have never suggested that in returning general verdicts in such cases the jurors should be required to agree

upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict."[27]

Furthermore, the plurality opinion in *Schad* has been undercut by the reasoning and result in the Supreme Court's later decision in *Richardson v. United States.*[28] In this more recent case, the Court held that, under the "continuing criminal enterprise" statute, the jury must "agree unani-

---

Penal Code, is generally the criminal act upon which all jurors must unanimously agree. *See United States v. Gipson,* in which Judge Wisdom stated:

> The unanimity rule ... requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged. Requiring the vote of twelve jurors to convict a defendant does little to insure that his right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required.

553 F.2d at 457–58 (concluding that a federal statute criminalizing the "bartering, selling, or disposing" of a stolen vehicle in interstate commerce or "receiving, concealing, or storing" it, required jury unanimity as to which type of criminal act defendant committed—"selling" or "receiving"). Although the Supreme Court criticized ·*Gipson's* notion of "distinct conceptual groupings" in *Schad* as being "too conclusory to serve as a real test" for deciding what facts a jury need unanimously agree upon, the *Schad* plurality did not disagree with the underlying proposition that all jurors must agree upon the specific statutory criminal act that the defendant was alleged to have committed. 501 U.S. at 634–35, 111 S.Ct. 2491.

In any case, we have already stated, in *Francis,* that the Texas requirements for a unanimous jury verdict "are not identical to

the requirements under federal law." *Francis,* 36 S.W.3d at 125 n. 1; *id.* at 127 n. 11 (Womack, J., concurring).

25. 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality op.).

26. *Id.* at 630, 111 S.Ct. 2491.

27. *Id.* at 631–62, 111 S.Ct. 2491; *see also Aguirre v. State,* 732 S.W.2d 320, 324–27 (Tex.Crim.App.1987) (op. on reh'g) (general verdict form proper when State alleged alternative means of committing one murder—intentionally causing victim's death or felony-murder). Similarly, under *Schad* and *Aguirre,* the State could charge Prince Yussupov with the murder of Rasputin, alleging five different manners and means—by poisoning, garroting, shooting, stabbing, or drowning Rasputin. The jury could return a general verdict if it found that Prince Yussupov intentionally caused the death of Rasputin by any of those means; the unanimity requirement goes to the act of "causing the death of Rasputin," while the jury need not be unanimous on the preliminary fact issues—whether it was by poisoning, garroting, etc. *Id.; see Kitchens v. State,* 823 S.W.2d 256, 257–58 (Tex.Crim.App.1991).

28. 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999).

mously about which specific violations make up the 'continuing series of violations.'" [29] In *Richardson*, as in the present case, it is not enough that the jurors might be convinced beyond a reasonable doubt that the defendant committed "a series of violations in concert with others," it must be unanimous about each specific violation (*i.e.*, which specific criminal act—which specific drug sale) that it found the defendant had committed.[30] The Supreme Court explained that a federal criminal jury must unanimously agree on each "element" of the crime in order to convict, but need not agree on all the "underlying brute facts [that] make up a particular element." [31] The crucial distinction is thus between a fact that is a specific *actus reus* element of the crime and one that is "but the means" to the commission of a specific actus reus element.[32] *Richardson* is precisely analogous to the present case.

■ The State is also mistaken in its second argument that, because the evidence shows the commission of two or more acts violating the same statutory offense, the defendant was required to request an election if he wanted the jury to reach a unanimous verdict on one single act. There are three variations on this theme, but none of them permits a non-unanimous verdict. First, the State could put on evidence of repetition of the same criminal act, but with different results.[33] Second, the State could put on evidence of repetition of the same criminal act on different occasions.[34] Third, the State could put on evidence, as it did in this case, of different criminal acts, each one of which

**29.** *Id.* at 815, 119 S.Ct. 1707.

**30.** *Id.* at 816, 119 S.Ct. 1707.

**31.** *Id.* at 817, 119 S.Ct. 1707. As the Court in *Richardson* explained:

> [w]here ... an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun. But that disagreement—a disagreement about means—would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely that the defendant had threatened force.

*Id.* at 817.

**32.** *Id.; see also United States v. Reeder*, 170 F.3d 93, 105 (1st Cir.1999) ("[w]hile a jury must agree on all of the elements of an offense, it need not agree on the means by which all the elements were accomplished").

**33.** For example, the State might charge a defendant with stealing a credit card from Hong Truong and put on evidence that he stole a credit card from Hong Truong and Hanh Nguyen. *See* GEORGE E. DIX & ROBERT O. DAWSON, TEXAS CRIMINAL PRACTICE AND PROCEDURE § 30.51 at 664 n. 1 (2nd ed. 2001) ("If an indictment alleges theft of one hog and the proof shows that by a single act the defendant stole two hogs, does this show two different units between which the State is required to elect?") & § 30.58 at 679 (discussing *Coward v. State*, 24 Tex.App. 590, 7 S.W. 332 (1888), in which "the old Court of Appeals held ... that when a defendant was tried for theft of one animal and the evidence showed the thief took two animals, the jury charge had to make clear which of the animals was the subject of the charged offense") & § 30.57 n. 17 at 149 (Supp.2004) (noting *Cates v. State*, 72 S.W.3d 681, 695 n. 5 (Tex.App.-Tyler 2001) "where the State's evidence showed multiple sexual acts committed by the accused against two children, the need for an election was not eliminated by the continuing course of conduct exception").

**34.** For example, the State could allege that appellant fraudulently presented Hong Truong's credit card to Hanh Nguyen, and then prove that he did so on Monday, Tuesday, and again on Wednesday. *See* DIX & DAWSON, § 30.55 at 673 (discussing *Crawford v. State*, 696 S.W.2d 903 (Tex.Crim.App.1985), in which "the indictment charged rape of a child consisting of a single act of intercourse with the named victim. The victim testified to numerous acts of intercourse over several years. Since each act of intercourse could constitute the charged offense, the State was required to elect one on which to proceed").

is a violation of a specific penal statute such as credit card abuse. Under any of these three scenarios, the defendant could require the State to elect which specific act it was relying upon for conviction, but he need not. Nonetheless, the jury must reach a unanimous verdict on which single, specific criminal act the defendant committed.

The present case bears great similarity to the scenario in *Francis v. State*,[35] in which the defendant was charged with one count of indecency with a child in a single paragraph indictment.[36] The State presented evidence of four separate acts of indecency, each act occurring at a different time and date. After the defendant requested the State to elect which specific act it sought to obtain a conviction, the State chose two of them—one involving touching the victim's breasts and one touching her genitals.[37] Those are separate criminal acts. These two separate acts were charged in the disjunctive in a single application paragraph,[38] such that the jury could have returned a non-unanimous verdict, with some of the jurors finding that the defendant touched the child's breast while others concluding that he touched her genitals. In *Francis*, we held that a jury charge which allows for a non-unanimous verdict concerning what specif-

ic criminal act the defendant committed is error.[39]

■■■■■■ In its Brief, the State attempts to distinguish *Francis* by arguing that appellant did not request an election, while the defendant in *Francis* did request an election. The State posits that jury unanimity is required only if the defendant requests an election between separate offenses. A request for an election, however, is not a prerequisite for implementing Texas' constitutional and statutory requirement of jury unanimity. An election simply limits the number of specific offenses that the jury may consider during its deliberations. Appellant's failure to request an election means that the jury may be instructed on several different criminal acts in the disjunctive, but it will still be instructed that it must unanimously agree on one specific criminal act.[40] As the State correctly points out, one of the purposes of requiring an election is "to ensure unanimous verdicts, that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred[.]"[41] But the converse is not true. The failure to request an election does not eliminate a defendant's right to a unanimous verdict.[42]

---

**35.** 36 S.W.3d 121 (Tex.Crim.App.2000).

**36.** *Id.*

**37.** *Id.*

**38.** The application paragraph in *Francis*, read, in pertinent part:

> If you find from the evidence beyond a reasonable doubt *that* on or about the 1st day of November, 1992, in Tarrant County, Texas, the Defendant, Joseph Clayton Francis, did ... engage in sexual contact by touching the breast *or* genitals of ...

36 S.W.3d at 124 (emphasis in original).

**39.** 36 S.W.3d at 125

**40.** *See* DIX & DAWSON, § 30.67 at 688–89 (such a charge "would not limit the jury to any one of several acts or incidents that might constitute the crime. It would, however, make clear that the jurors must unanimously agree on one of them as constituting the proved offense").

**41.** *Phillips v. State*, 130 S.W.3d 343, 349 (Tex. App.-Houston [14th Dist.] 2004, n.p.h.).

**42.** *See Francis*, 36 S.W.3d at 127 n. 10 (Womack, J., concurring) ("[w]e do not reverse for the election error. It is necessary to discuss the principles that underlie the requirement of election because one of those principles was violated by the error in the charge").

There is one point upon which we disagree with the Eastland Court of Appeals. The error here is not in submitting the three separate offenses "in the disjunctive." [43] The error is in failing to instruct the jury that it must be unanimous in deciding which one (or more) of the three disjunctively submitted offenses it found appellant committed. Indeed, the application paragraphs submitted to the jury in this case would have been clearly correct had each paragraph included just one additional word: "unanimously," such that all twelve jurors would immediately realize that they had to agree on one specific paragraph which set out one specific criminal act.[44] The general verdict form of "guilty" or "not guilty" is also proper because it does not matter which criminal act of credit card abuse the jury found appellant had committed as long as each juror agreed on the same criminal act. In this case, however, the jury was never informed, in any way, by anyone, at any time, that—as a collective body—it was required to reach a unanimous verdict concerning one specific criminal act. The way that these three application paragraphs were set out, the jury could well have been misled into believing that only its ultimate verdict of "guilty" need be unanimous. Under these particular circumstances, we conclude that, taken as a whole, the jury charge contained error.

Having found error in the jury charge, we now turn to the question of whether appellant suffered "egregious harm" because he failed to object to the jury charge.

---

43. *Ngo*, 129 S.W.3d at 201 (stating that "because of the possibility of a non-unanimous jury verdict, 'separate offenses' may not be submitted to the jury in the disjunctive"). In making this statement, the court of appeals cited to *Francis*, but as the State correctly points out, the defendant in *Francis* requested that the State elect one single offense to submit to the jury. Here, appellant did not so request. Therefore, he waived any right to require the State to pick just one of the three criminal acts to submit. The jury *could* be charged disjunctively, as long as it was also informed that it must be unanimous in deciding which criminal act (or acts) appellant committed—stealing the credit card, receiving a stolen credit card, or fraudulently presenting it.

44. Thus, a clearly correct version of the application paragraphs would have read:

Now, if you **unanimously** find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, did then and there unlawfully, intentionally or knowingly steal a credit card owned by the card holder, Hong Truong, with intent to deprive the cardholder of the property and without the effective consent of the cardholder; *or*

If you **unanimously** find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, did then and there unlawfully and knowingly receive with intent to use a credit card owned by card holder, Hong Truong, knowing the credit card had been stolen; *or*

If you **unanimously** find from the evidence beyond a reasonable doubt that [appellant] on or about the 13th day of December, 2002, with intent to obtain a benefit fraudulently, did use or present to [H]anh Nguyen a credit card knowing the use was without the effective consent of the cardholder, Hong Truong, namely without consent of any kind, and knowing that the credit card had not been issued to the defendant, then you will find [appellant] guilty as charged in the indictment.

(Emphasis added). There is, of course, nothing in the Texas Constitution, statutes, or case law that requires a jury charge to contain the explicit words "unanimous" or "unanimously." But Texas law *does* explicitly require that a jury's verdict be unanimous. The addition of the word "unanimously" before the description of each distinct criminal act in the application is merely one way to implement that legal requirement. We certainly do not suggest that it is the only way.

## B. Appellant suffered "egregious harm" when the jury was repeatedly told that it need not return a unanimous verdict.

 Under the *Almanza* standard, the record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury instruction error.[45] Errors that result in egregious harm are those that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory."[46] Appellant argues that he suffered actual harm from the faulty jury instruction and that he was, in fact, deprived of his valuable right to a unanimous jury verdict.

 The court of appeals found egregious error under *Almanza* because: 1) the jury charge permitted a non-unanimous verdict; 2) during its closing argument, the State forthrightly told the jury that it need not be unanimous in its verdict (as quoted in Part I *supra*); and 3) "there were contested issues at trial."[47] In fact, there was more.[48]

Near the beginning of the State's voir dire, the prosecutor told the jurors:

> So, I'm going to explain the three ways that we've alleged that I'm going to intend to prove in this case: That the defendant, Mr. Ngo, on or about December 13th, in Harris County, Texas, intentionally and knowingly stole a credit card with intent to deprive without the consent of Hong Truong. That's one way we can do it.

Second way, that the defendant, on or about December 13, in Harris County, Texas, received with intent to deprive without the consent of Hong Truong. That's one way we can do it.

And the third way, defendant, on or about December 13th, in Harris County, Texas, with intent to obtain a fraudulent benefit used or presented a credit card to Mr. Hanh Nguyen without the consent of Ms. Hong Truong. Does that make sense to everybody? There's several different ways this can happen. Who in the first row does that not make sense to?

> *The important thing with this is that if three of you who end up sitting on the jury panel feel like he stole the credit card and used it, six of you think that he received it and three of you think he presented it, it doesn't matter which one you think he did. It can be a mix and match, whichever one you believe.*

Everyone in the first row agree that that's okay? *Because that's the law.* (emphasis added).

But that is not the law; that is the error in this case. Then, during the defense voir dire, while the defense was trying to explain (erroneously) that the State must prove all three criminal acts, the prosecutor objected, and the trial judge told the jurors:

> There's three ways alleged that the offense can be committed. The State must prove, to your satisfaction, one of the number of them; however, in the course of the proof, *the State may prove*

---

**45.** *Dickey v. State,* 22 S.W.3d 490, 492 (Tex. Crim.App.1999) (citing *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986)).

**46.** *Hutch v. State,* 922 S.W.2d at 171.

**47.** *Ngo,* 129 S.W.3d at 201–02.

**48.** Under *Almanza,* to determine whether the error was so egregious that a defendant was denied a fair and impartial trial, a reviewing court should examine: 1) the entire jury charge; 2) the state of the evidence; 3) the arguments of counsel; and 4) any other relevant information in the record. 686 S.W.2d at 171.

*one to the satisfaction of part of the jury, another one to the satisfaction of others, the third one to the satisfaction of another part of the jury,* but if you found the defendant guilty, you must believe the State has proved one of the three paragraphs in its entirety.

Thus, both the trial judge and the prosecution misstated the law at the very beginning of the case and at the very end.[49] This is not an instance of a jury charge which is simply missing an important word—"unanimously"—which reasonable jurors might infer from the context of the entire charge or from the comments of the advocates emphasizing the correct legal principles.[50] Here, the jury was affirma-

tively told, on three occasions, twice by the prosecutor and once by the trial judge, that it need not return a unanimous verdict. Both told the jury that "a mix and match" verdict of guilt based upon some jurors believing appellant stole a credit card, others believing he received a stolen credit card, and still others believing that he fraudulently presented one, was "the law." [51]

Furthermore, the evidence was contested as appellant testified and denied committing any one of the three offenses. And, under no theory of the evidence in this case, could appellant have committed both the original theft by burglarizing Ms. Truong's apartment *and* have received the

**49.** Defense counsel did not object to these misstatements of the law by either the prosecutor or trial judge. The record shows that the prosecutor handed the trial judge a copy of a case from this Court. Apparently all three—the prosecutor, defense attorney, and judge—innocently, but mistakenly, believed that this Court's opinion that a jury's "mix and match" nonunanimous verdict on the specific "manner and means" of committing one single criminal act (e.g., causing a person's death by strangling, shooting, poisoning, or garroting) also applied to a "mix and match" nonunanimous verdict concerning different criminal acts which violate the same statutory provision. Thus, all three acted in complete good faith when each either unintentionally committed error or failed to object to the error.

**50.** *Compare Hoover v. Johnson,* 193 F.3d 366, 367–68 (5th Cir.1999) (when both state prosecutor and defense attorney correctly explained Texas law of unanimity to jury, habeas petitioner's federal constitutional claim that jury instructions did not guarantee jury unanimity rejected).

**51.** *See, e.g., Castillo v. State,* 734 N.E.2d 299, 304–305 (Ind.App.2000) (trial court's failure to instruct jury on unanimity requirement when State offered evidence that defendant had committed same "dealing cocaine" offense twice was reversible error when both trial court and prosecutor told jury it had "a

choice" of convicting defendant for "one or the other ... or both" instances of drug dealing); *Colorado v. Estorga,* 200 Colo. 78, 82, 612 P.2d 520, 523 (Colo.1980) (en banc) (defendant's right to unanimous verdict violated where state offered evidence of more than one alleged sexual assault on different occasions and trial court instructed the jury it could find defendant guilty if "the evidence showed that the crime had occurred at any time within three years prior to the filing of the information"); *Horton v. United States,* 541 A.2d 604, 610–11 (D.C.Ct.App.1988) (defendant's right to unanimous jury verdict violated when different factual scenarios could have supported jury verdict on assault conviction and appellate court could not "infer from the verdicts themselves that all the jurors were in agreement as to appellant's specific criminal acts"); *Hawaii v. Mahoe,* 89 Hawai'i 284, 291, 972 P.2d 287, 294 (Haw.1998) (right to unanimous jury verdict violated when defendant made two distinct entries into residence, prosecution did not elect which entry to rely on for conviction, and jury not given specific instruction of requirement of unanimity for underlying criminal act); *Illinois v. Scott,* 243 Ill.App.3d 167, 183 Ill.Dec. 750, 612 N.E.2d 7, 9, (Ill.Ct.App.1993) (right to unanimous verdict violated when defendant charged with three counts of delivery of a controlled substance and verdict form included only one count of delivery, allowing jurors to find guilt without agreeing upon which count he was guilty).

stolen credit cards from someone else who had committed the burglary. These two offenses are mutually exclusive in this particular context. If even a single juror believed that appellant was not the original thief, but did believe that he had received the stolen credit card from "Mike," this could not have been a unanimous verdict.

In sum, this is an instance in which the original jury charge error was not corrected or ameliorated in another portion of the charge; instead, it was compounded by the one misleading statement concerning unanimity that was set out in the jury charge, as well as by the affirmative statements of both the trial judge and prosecutor that the jury could indeed return a non-unanimous verdict. And, given the state of the evidence, we—like the court of appeals—cannot determine that the jury was, in fact, unanimous in finding appellant guilty of one specific credit-card-abuse offense. Some jurors could have found appellant's defense to one or more of the three allegations persuasive while finding another one unpersuasive. We therefore agree that appellant's constitutional and statutory right to a unanimous jury verdict was violated and this violation caused egregious harm to his right to a fair and impartial trial.[52] We affirm the judgment of the court of appeals.

**52.** *See Clear v. State,* 76 S.W.3d 622, 624 (Tex.App.-Corpus Christi 2002, no pet.) (finding egregious harm to defendant's right to a unanimous jury verdict when jury charge allowed conviction upon disjunctive submission of three separate sexual assault of a child offenses); *see generally, Ruiz v. State,* 753 S.W.2d 681, 683 (Tex.Crim.App.1988) (egregious harm resulted from failure to instruct jury on State's burden to disprove sudden passion when defendant did not offer evidence of any other defense); *Bellamy v. State,* 742 S.W.2d 677, 685–86 (Tex.Crim.App.1987) (plurality op.) (egregious harm resulted from erroneous instruction on presumption of

WOMACK, J., filed a concurring opinion in which MEYERS, J., joined.

HERVEY, J., filed a dissenting opinion in which KEASLER, J., joined.

KELLER, P.J., dissented without opinion.

WOMACK, J., concurring in which MEYERS, J., joined.

I join the Court's opinion with the understanding that its finding of "egregious harm" in this case, like our finding of "some harm" in *Francis v. State,*[1] is based on more than the mere use of the word "or" in the charge.

Three of the six members of the court who found the error in *Francis* to be reversible recognized the "strange context" in which it occurred:

a general, one-paragraph indictment that was ill-suited to a multiple-offense trial; an indictment in the conjunctive that could have been in the disjunctive; evidence of multiple offenses, none of which were described by the conjunctive pleading; two denied requests for the State to elect the incident on which it would rely; the State's incorrect decision to rely on two incidents when it had only pleaded one; and the erroneous decision to authorize the jury to convict

knowledge that property was stolen when defendant's knowledge was sole contested issue at trial); *see also Horton,* 541 A.2d at 611–12 (although defendant did not object to lack of unanimity instruction in jury charge, failure to give such an instruction was "plain error, that is, error so clearly prejudicial to substantial rights of the defendant as to jeopardize the very fairness and integrity of the trial" when jury could have been misled into believing that it need not be unanimous on which of two different assaults he committed).

**1.** 36 S.W.3d 121 (Tex.Cr.App.2000).

for either of two offenses when the indictment pled only one.[2]

The charge in this case also was surrounded by errors, as the court's opinion points out: the prosecutor's incorrect statement in voir dire that the law does not require a unanimous verdict, the trial court's making a statement to the same effect in voir dire, and the prosecutor's reiteration of the wrong law in argument.[3]

It could be said of both *Francis* and this case that, by failing to cure the cumulative effect of a series of missteps, the courts' charges contained the ultimate step that make "it appear[ ] from the record that the defendant has not had a fair an impartial trial" within the meaning of Article 36.19.

HERVEY, J., dissenting in which KEASLER, J., joined.

I respectfully dissent. In this case, a jury unanimously convicted appellant of a single credit card abuse offense. The Court decides that appellant's state constitutional right to a unanimous jury verdict was violated because the jury's unanimous guilty verdict could have been based on a split vote. The State alleged, in three separate paragraphs, three separate acts, that could have been charged as three separate offenses. *See Ngo v. State,* 175 S.W.3d 738, 741 (Tex.Cr.App. No. PD–0504–04, delivered this date) (three application paragraphs in jury charge permitted jury to convict appellant if some of the jurors found that he stole the credit card, others believed he received a stolen credit card, and still others thought that he fraudulently presented it).

This scenario implicates the Supreme Court's decision in *Schad v. Arizona*[1] and this Court's decision in *Francis v. State.*[2] It does not, however, implicate appellant's state constitutional right to a unanimous jury verdict. Rather, it implicates the "permissible [due process] limits in defining criminal conduct, as reflected in the instructions to jurors applying the [application paragraphs], not one of jury unanimity." *See Schad,* 501 U.S. at 631, 111 S.Ct. 2491.[3] And, it would appear that

2. *See id.,* 125, at 127 (concurring opinion).

3. *See ante,* at Part II. B.

1. 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).

2. 36 S.W.3d 121 (Tex.Cr.App.2000).

3. In *Schad,* 501 U.S. at 630–31, 111 S.Ct. 2491, the Supreme Court described the issue in the following manner:

Petitioner's first contention is that his [first-degree murder] conviction under instructions that did not require the jury to agree on one of the alternative theories of premeditated and felony murder is unconstitutional. [Footnote omitted]. He urges us to decide this case by holding that the Sixth, Eighth, and Fourteenth Amendments require a unanimous jury in state capital cases, as distinct from those where lesser penalties are imposed. [Citations omitted]. We decline to do so, however, because the suggested reasoning would beg the question raised. Even assuming a requirement of jury unanimity *arguendo,* that assumption would fail to address the issue of what the jury must be unanimous about. Petitioner's jury was unanimous in deciding that the State had proved what, under state law, it had to prove: that petitioner murdered either with premeditation or in the course of committing a robbery. The question still remains whether it was constitutionally acceptable to permit the jurors to reach one verdict based on any combination of the alternative findings. If it was, then the jury was unanimous in reaching the verdict, and petitioner's proposed unanimity rule would not help him. If it was not, and the jurors may not combine findings of premeditated and felony murder, then petitioner's conviction will fall even without his proposed rule, because the instructions allowed for the forbidden combination.

In other words, petitioner's real challenge is to Arizona's characterization of first-degree murder as a single crime as to which a

(even though all three acts in the application paragraphs are morally equivalent),[4] those permissible due process limits may have been exceeded in this case[5] unless the jury was instructed that it had to unanimously agree on at least one of the application paragraphs before it could convict appellant.

The Court decides that this could have been accomplished by inserting the word "unanimously" into each application paragraph. *See Ngo*, Op. at 749 (application paragraphs would have been correct had each paragraph included the word "unanimously"). But, the charge instructed the jury that it had to unanimously agree on a verdict.[6] This instruction with each application paragraph submitted in the disjunctive accomplished instructing the jury that it had to unanimously agree on at least one of the application paragraphs before it could convict appellant.

In addition, the three application paragraphs arising from one offense are what distinguishes this case from *Francis* which involved a single application paragraph authorizing the defendant's conviction for indecency with a child if the jury found that the defendant touched the victim's "breast or genitals" which the evidence showed "referred to two offenses that were committed in two separate incidents." *See Francis*, 36 S.W.3d at 121 (Womack, J., concurring). The single application paragraph presenting two separate offenses in *Francis* presented a risk that the defendant could have been convicted on either of these two separate offenses submitted in that single application paragraph even though the jury was not unanimous. *See id.* This case does not present that situation.

Here, appellant failed to alert the trial court to his unanimous jury verdict claim. He also failed to object to any statements by the prosecution and the trial court during voir dire on this subject. This should not entitle appellant to a harm analysis that seeks to determine whether "the jury was, in fact, unanimous in finding appellant guilty of one specific credit card abuse case." *See Ngo*, Op. at 752 (deciding that appellant was "egregiously harmed" because it cannot be determined whether jury unanimously agreed on one of the application paragraphs). This is the type of harm analysis that should apply had appellant timely objected to the charge and given the trial court an opportunity to correct any error in the charge. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Cr.App.1984) (op. on reh'g) ("some harm"

---

verdict need not be limited to any one statutory alternative, as against which he argues that premeditated murder and felony murder are separate crimes as to which the jury must return separate verdicts. The issue in this case, then, is one of the permissible limits in defining criminal conduct, as reflected in the instructions to jurors applying the definitions, not one of jury unanimity.

4. *See Schad*, 501 U.S. at 643–45, 111 S.Ct. 2491 ("moral disparity" between different means in jury charge to satisfy *mens rea* element of single offense could present federal constitutional due process violation).

5. *See Schad*, 501 U.S. at 651, 111 S.Ct. 2491 (Scalia, J., concurring) (due process would

not permit "an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday, despite the 'moral equivalence' of those two acts"); *Ngo*, Op. at 745 n. 22; *Francis*, 36 S.W.3d at 125 (jury charge permitted conviction for an offense based on separate acts at different times).

6. The jury charge stated:

After you retire to the jury room, you should select one of your members as your Foreman. It is his or her duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto and signing the same as Foreman.

analysis applies to jury charge error that is subject to timely objection, "egregious harm" analysis applies to jury charge error that is not subject to timely objection); *Posey v. State,* 966 S.W.2d 57, 60 (Tex.Cr. App.1998) (discussing reasons for requiring a party to timely object).

Both harm standards set out in *Almanza* require that "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information by the record of the trial as a whole." *See id.; Posey,* 966 S.W.2d at 60 n. 3. Applying this analytical framework to this case, it is evident that the jury did not believe appellant's testimony that someone named "Mike" gave him the credit cards or that, in direct conflict with the bar manager's testimony, appellant did not attempt to use any of these credit cards to buy beer. *See Ngo,* Op. at 742. Had the jury believed appellant, it would have acquitted him. At the very least then, the record in this case shows that the jury had to have believed that appellant attempted to buy beer with a credit card that did not belong to him (which is covered by the third application paragraph). *See id.*

Based on this state of the record, I would decide that appellant was not "egregiously harmed" by any error in the charge because the jury could have given effect to appellant's defense and acquitted him under the instructions given, and the evidence is sufficient to support at least the third application paragraph. *Cf. Gonzalez v. State,* 8 S.W.3d 640, 641 (Tex.Cr. App.2000) (general substantive constitutional rule is that "a general verdict [is] valid so long as it [is] legally supportable on one of the submitted grounds—even though that [gives] no assurance that a valid ground, rather than an invalid one, [is] actually the basis for the jury's action"). This is how I would apply the harm analysis in this case where appellant may have helped lead the trial court into error when he affirmatively stated that he had no objection to the charge.

In footnote 52 of its opinion, the Court cites a District of Columbia Court of Appeals case to support its decision that the lack of a special unanimity instruction constituted egregious harm. *See Ngo,* Op. at 752 n. 52 *citing Horton v. United States,* 541 A.2d 604 (D.C.Ct.App.1988). *Horton* applied a "plain error" harm analysis to unpreserved error in the failure to submit a special unanimity instruction. *See Horton,* 541 A.2d at 611 (unpreserved jury charge error requires reversal only upon "a showing of plain error, that is, error so clearly prejudicial to substantial rights of the defendant as to jeopardize the very fairness and integrity of the trial").

*Horton,* however, is distinguishable from this case in several important respects. *Horton* involved three separate convictions (where it was possible that the jury may not have been unanimous on any one of these convictions) while this case involves only one conviction. *See Horton,* 541 A.2d at 605–06. *Horton* also involved an element of juror confusion inherent in separate defenses to separate alleged acts. *See Horton,* 541 A.2d at 606–08, 611 (right to unanimous jury clearly prejudiced by confusion inherent in separate defenses to separate gunshots). This case essentially involves one defense (appellant received from "Mike" a credit card which appellant never used) applicable to all three application paragraphs. *See Shivers v. United States,* 533 A.2d 258, 263 (D.C.Ct.App. 1987) (distinguishing situation in *Horton* on this basis and not finding, as another possible source of jury confusion, a problem with distinct and sharply different defenses).

*Shivers* also notes that the District of Columbia practice is "somewhat more stringent" than the "apparent prevailing [plain error] practice in the federal courts." *See Shivers,* 533 A.2d at 261 n. 7, and at 263 n. 13. According to *Shivers,* the apparent prevailing practice in the federal courts "is to find no 'plain error' so long as evidence as to each incident is sufficiently strong to defeat a motion for a directed verdict of not guilty as to that incident." *See Shivers,* 533 A.2d at 261 n. 7. Also, according to *Shivers,* the "federal courts consider a general unanimity instruction [such as the one in this case] sufficient to insure a unanimous verdict 'except in cases where the complexity of the evidence or other factors create a genuine danger of jury confusion.' " *See Shivers,* 533 A.2d at 263 n. 13. This relatively simple case did not create a genuine danger of jury confusion.

I respectfully dissent.