# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00611-CR

**Toni Martinez, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
NO. D-1-DC-08-201403, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Toni Martinez of the offense of injury to a child. *See* Tex. Penal Code Ann. § 22.04(a)(1) (West Supp. 2008). Punishment was assessed at eighteen years' imprisonment. In two points of error, Martinez asserts that the jury charge given during punishment, as mandated by article 37.07, section 4(a), of the code of criminal procedure, is unconstitutional under the due-course-of-law provisions of the Texas Constitution and the due-process clause of the United States Constitution. We will affirm the judgment of conviction.

## BACKGROUND

The underlying facts of this case are not disputed on appeal. The jury heard evidence that, on March 8, 2008, Martinez's two-year-old son was rushed by ambulance to the hospital. His injuries included retinal hemorrhaging and a subdural hematoma, i.e., a blood clot between the brain and the skull. Doctors performed emergency neurosurgery, which involved "the extreme measure

of removing a portion of the skull." One of the doctors who treated the child testified that the child had suffered a "traumatic brain injury," and the child "would probably be dead were it not for the medical interventions that took place after he was brought to the hospital." The child was diagnosed with shake-impact syndrome, also known as shaken-baby syndrome.

Martinez was interviewed by Child Protective Services. The investigator who interviewed Martinez, Coty Stanley, testified that Martinez told her that she had "lost her temper" with the child, "shook him," and "took him then into the bathroom and threw him into the tub." According to Stanley, "She said that he hit the tub bottom first and she began hitting him over the head openhanded." Then, Stanley continued, Martinez "noticed that something wasn't right, his eyes were glazed over, and that's when she had called for an ambulance."

Martinez was subsequently charged with the first-degree felony offense of injury to a child. The indictment alleged that Martinez intentionally or knowingly caused serious bodily injury to the child and that she used or exhibited a deadly weapon during the commission of the offense, namely her hand. The jury found Martinez guilty of the lesser-included offense of recklessly causing serious injury to a child, a second-degree felony. The jury also found that Martinez used or exhibited a deadly weapon during the commission of the offense. Martinez was sentenced to eighteen years' imprisonment. This appeal followed.

**STANDARD OF REVIEW**

In evaluating Martinez's complaint of charge error, we apply the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005);

2

*Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). If error exists, we then evaluate the harm caused by the error. *Ngo*, 175 S.W.3d at 743; *Swearingen*, 270 S.W.3d at 808.

## ANALYSIS

Because of the deadly weapon finding in this case, the jury charge on punishment included the following language as mandated by article 37.07, section 4(a), of the code of criminal procedure:

5.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

6.

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

7.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

8.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (West Supp. 2008).

Martinez, while acknowledging that the above paragraphs are "required by Texas law," nevertheless asserts that the statutory language is erroneous and unconstitutional because it misled the jury into believing that Martinez's sentence could be shortened by earning good-conduct time, when in fact, because of the deadly weapon finding, good-conduct time has no effect on her parole-eligibility date, and she is not eligible for mandatory supervision. *See* Tex. Gov't Code Ann. § 508.149(a)(1) (West Supp. 2008) (providing that inmate may not be released to mandatory supervision if inmate is serving sentence for offense that contains affirmative finding under article 42.12, section 3g(a)(2), code of criminal procedure).

Martinez's arguments have already been addressed by the court of criminal appeals. *See Luquis v. State*, 72 S.W.3d 355 (Tex. Crim. App. 2002). In *Luquis*, the court held that a trial court does not err by giving the above instructions, *see id*. at 363, and that the above instructions do not violate a defendant's due-process or due-course-of-law rights. *See id*. at 364-68. The *Luquis* court recognized that there may be some cases in which the parole-law instruction "may be

4

misleading as applied to the facts in a particular case." *Id*. at 367. However, in such a case, there must be evidence in the record that the parole-law instruction "was calculated to mislead [the] jury or that there is a reasonable probability that it did mislead [the] jury." *Id*. Nothing in the record suggests that this is such a case.

Martinez acknowledges the court's decision in *Luquis*, but criticizes the court's reasoning and asks this Court to "revisit" the issue. However, this Court is bound by the precedent of the court of criminal appeals and has no authority to disregard or overrule its decisions. *See State ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971); *Wiley v. State*, 112 S.W.3d 173, 175 (Tex. App.—Fort Worth 2003, pet. ref'd).

We overrule Martinez's first and second points of error.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: August 21, 2009

Do Not Publish

5