**Affirm and Opinion Filed July 19, 2013**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00422-CR

### AUSTIN MICHAEL BRUMLEY, Appellant
V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 401st Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 401-81289-2011

## OPINION

Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice Francis

Austin Michael Brumley appeals his conviction for the murder of Jonathan Bird. After finding appellant guilty, the jury assessed punishment at twenty-four years in prison. In a single issue, appellant claims the trial court erred by denying his request for an instruction on self defense. We affirm.

Just before midnight on November 7, 2009, Wylie police officer Jason Smith responded to a call about an assault at a house at 301 Third Street in Wylie. On arrival, Smith could see Bird lying in front of a house with his head and upper torso in the grass, and his lower body in the street. Vincent Walters, Bird's good friend, was kneeling next to him. Bird had severe trauma to his head and was bleeding from his ears, eyes, and nose. He did not appear to be breathing. Smith secured the crime scene and later accompanied two other officers when they

went to appellant's house to ask him about his whereabouts and activities earlier that evening. After appellant admitted being with four friends and having a fight with "an old guy," police arrested him. Appellant was charged and convicted of murder.

In his only point of error, appellant claims the trial court erred by denying his request for an instruction on self defense because appellant believed the only way to stop the fight and protect himself was to use deadly force.

We use a two-step process in reviewing jury charge error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). First, we determine whether error exists in the charge. *Id*. If error does exist, we review the record to determine whether the error caused sufficient harm to require reversal of the conviction. *Id*. When the defendant properly objects to the error in the charge, reversal is required unless the error was harmless. *Id*.

A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (West 2011). A person is justified in using deadly force against another if the actor would be justified in using force against another under section 9.31 and when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. *Id*. § 9.32(a). A person is justified in using force or deadly force against another to protect a third person if, (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under section 9.31 or 9.32 in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person. *Id*. § 9.33. A

defendant is entitled to a charge on a defensive issue if raised by the evidence even if that evidence is weak or contradicted and regardless of whether the trial court finds the evidence credible. *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007). Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law. *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007).

At trial, Jordan Jones said he is "best friends" with Blake Martinez whose mother, Codi Duer, was engaged to Bird. Jones, who was fifteen years old at the time, knew Bird for about two years. On November 7, Jones, Martinez, Bird, and Walters had gone fishing. They stopped at a Jack-in-the-Box on the way home to get some tacos. Once they got to Bird's house at 301 Third Street, they started unloading the fishing gear from the truck. A dark blue Dodge pickup truck sped around the corner of the street, and Bird yelled at the driver to "slow the 'F' down" because it was a residential area with "kids around." The truck stopped, and the driver and Bird exchanged words. The driver said he would come back with an AK-47 and "shoot everybody up." Bird slammed the side of the truck, denting it. The driver then sped off, bumping Bird in the process.

The truck came back a second time. Jones did not recognize the driver but knew the passenger was Seth Dorris, a guy Jones had known since the fourth grade. Seth was yelling and screaming out the window that they were going to come back and beat up Bird who was standing in the street. The truck left, only to return about three to five minutes later. The truck stopped down the street, and five people got out, including Seth and his brother, Ethan Dorris. They were all focused on Bird.

According to Jones, everything from this point moved relatively fast. Bird tripped on a rock, falling backwards, and Seth punched Bird in the face. Bird stumbled across the street, and

everybody from the truck jumped on him and began hitting and kicking him. Jones did not see Bird fight back or throw any punches. Walters, who had been on the phone when the attack began, ran over to where the men from the truck were on top of Bird and "dogpiled everybody to get off of him." Four of the men ran back to the truck, but Seth remained sitting on top of Bird, hitting him in the face. Bird did not move again. Jones said it all seemed to happen in about 30 seconds.

Martinez testified to similar facts. When the truck sped through the neighborhood, Bird yelled at the driver to "slow the 'F' down." The driver appeared to have heard him because the truck stopped. Bird walked over to the truck and talked to the driver although Martinez could not hear what was said. Bird returned, and the truck left. Martinez went inside to change clothes but returned outside in time to see the truck come back a second time. The truck stopped near where Bird was standing in his driveway and the passenger, Seth, yelled at Bird about "messing with my boy." Bird told him to shut up before he pulled Seth out of the truck by his ears. The truck left but returned a third time about five to ten minutes later.

This time, five men got out, including Seth. They stood around Bird in a semicircle. Bird did not say anything but Seth said "something about Blood, about being Blood or something." Seth threw a punch at Bird and hit him in the side of the head. The others four "jumped in and kind of started beating on him." Bird did not throw any punches and did not say anything. He fell to the ground, and the men continued to punch and kick him until Walters ran over to help Bird. Martinez said the whole thing lasted about five minutes.

Geena Aparicio, appellant's girlfriend at the time of Bird's death, lived a few blocks away from Bird. On November 7, Seth and Ethan had been at her house all day. Around 8:00 that evening, appellant, Travis Harmon, and Sandy Matijevic arrived in appellant's dark blue

4

Dodge truck. Harmon left in the truck, returning about ten minutes later. When he returned, he was "somewhat angry" and "upset" because "someone was fighting with him." He left again with Seth. When the two men returned, they were "pumped up." All five got in the truck and left. When they returned, they seemed normal although they stayed only five minutes before going home.

Matijevic was with Seth, Ethan, Harmon, and appellant at Aparicio's house that night. Harmon left in appellant's truck and came back, complaining that someone told him to slow down and cursed at him. He seemed pretty upset and got Seth to leave with him, purportedly to get cigarettes. According to Matijevic, they did not have to drive by Bird's house to get them. Nevertheless, when they returned shortly afterwards, both were mad. They had gone by Bird's, and Seth claimed someone punched him through the window while Harmon said somebody threw a taco at him. They wanted to return and fight. Matijevic said he and appellant did not want to go but Ethan did, so they all got in the truck.

They drove to Bird's house. Matijevic believed they were going to get in a fight when they got to there. Seth was the first one out and began fighting Bird, yelling something about "Bloods." Bird fought back, and they were "kind of boxing" in the middle of the street. The other four were standing by the truck, just watching. Walters ran up to Matijevic, put his hand in his pocket, and said he was going to shoot him. Matijevic got scared and moved away. Walters then "took off the other way."

When Seth and Bird stopped fighting, Walters grabbed Seth and took him to the ground. Bird, now standing by the tailgate of the truck, tried to punch Matijevic who, in turn, punched Bird in the face. Ethan then grabbed Bird and "started kneeing him, like in his chest area, his face . . . and took him to the ground" where they wrestled. In the meantime, Harmon went to

help Seth who had Walters on top of him. Matijevic saw appellant walk to the truck, so Matijevic followed him. Appellant opened the driver side door, then ducked, and started walking back towards the group. Matijevic watched as appellant walked over to Bird, who was on the ground, and hit him twice in the head with a hammer. Matijevic got scared and ran back to the truck. Appellant followed as did the others. They then drove off. Appellant seemed shocked and said he did not know why he did what he did. Matijevic said the whole thing felt like it lasted one or two minutes. Matijevic described Bird as a big man but said Walters was bigger. In comparison, the five guys from the truck were all smaller than Bird and Walters.

Walters's testimony about the events that night was similar to Martinez's and Jones's except he remembered only two interactions with the truck and its occupants: the initial confrontation with the truck's driver and the last one when five guys, who all appeared to be minors, got out and began beating on Bird. Walters was on the phone with his sister at the time of the last confrontation and said it happened so fast that Bird was already on the ground by the time Walters realized what was going on. He managed to get the attackers off Bird but not in time to save him. Appellant did not testify and did not call any witnesses to testify.

Although appellant contends the trial court erred by denying his request for an instruction on self defense, we cannot agree. A party is entitled to use deadly force when and to the degree he reasonably believes such deadly force is immediately necessary to protect himself or a third person against the other's use or attempted use of unlawful deadly force. Thus, to be entitled to an instruction in these cases, there had to be some evidence to show appellant reasonably believed he needed to use deadly force to protect himself or his friends against Bird's use or attempted use of deadly force. No witness testified Bird used or attempted to use deadly force. No witness testified that, on the night of the attack, appellant thought or believed Bird was using

6

or trying to use deadly force or that appellant needed to use deadly force to protect himself or his friends. Three of the four eyewitnesses testified Bird did not throw any punches and was attacked by all five men who beat and kicked him. Although the fourth eyewitness testified Bird threw some punches, he did not say Bird hit or threatened appellant, and there is no other evidence in the record that Bird hit or attempted to hit appellant, let alone with deadly force. Although appellant claims in his brief that he "had every reason to believe that the only way to stop the fight and to protect himself and his friends was to use deadly force," appellant does not cite us to any evidence, and our review of the record has found none, to support this blanket contention. In fact, the only evidence of appellant's belief that evening is when he told Matijevic he "did not know why he did what he did." Under these facts and circumstances, we cannot conclude the trial court erred by denying appellant's request. We overrule his sole point of error.

We affirm the trial court's judgment.


Do Not Publish
TEX. R. APP. P. 47
120422F.U05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AUSTIN MICHAEL BRUMLEY, Appellant

No. 05-12-00422-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-81289-2011.
Opinion delivered by Justice Francis,
Justices O'Neill and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 19, 2013

/Molly Francis/
MOLLY FRANCIS
JUSTICE