Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-07-00479-CR

Jose Geraldo **CASTANEDA-LERMA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kimble County, Texas
Trial Court No. 06-1522
Honorable Emil Karl Prohl, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Alma L. López, Chief Justice
              Phylis J. Speedlin, Justice
              Rebecca Simmons, Justice

Delivered and Filed:   June 25, 2008

REVERSED AND REMANDED

Jose Geraldo Castaneda-Lerma was convicted by a jury of sexual assault and sentenced to fifteen years imprisonment. On appeal, Castaneda-Lerma contends the evidence is insufficient to support his conviction, the jury charge was fatally flawed, and the trial court erroneously admitted certain evidence. We reverse the trial court's judgment and remand the cause to the trial court for a new trial.

**BACKGROUND**

Around 4:00 a.m., A.T. was taken to the emergency room at a hospital in Kimble County for heavy vaginal bleeding. Because the Kimble County hospital did not have the necessary equipment to fully examine or treat her, A.T. was transported to the hospital in Kerrville. A.T. was transported by ambulance because her blood loss had caused her blood pressure to drop. A.T was examined at the Kerrville hospital and underwent a fifty-minute surgical procedure to repair a pulsating arterial bleed. The laceration required eight stitches to repair. Although A.T. initially told her sister, the hospital personnel, and the investigating officers that the bleeding was the result of a non-consensual sexual assault, she recanted at trial and testified that the sexual encounter was consensual.

**DISCUSSION**

In his first issue, Castaneda-Lerma contends that the jury charge was fatally flawed because it permitted his conviction on proof different from, and less than, that required to prove the allegation in the indictment. In reviewing an issue complaining of charge error, we consider two questions: (1) whether error existed in the charge; and (2) whether harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). If error exists, the degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Id*. at 743. When the defendant has properly objected to the charge, reversal is required if we find "some harm" to the defendant's rights. *Id*. When the defendant fails to object, we will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *Id*.

The indictment in this case alleged that Castaneda-Lerma:

intentionally or knowingly sexually assault[ed] [A.T.] by causing his sexual organ to penetrate the female sexual organ of [A.T.], without [A.T.'s] consent, and the said JOSE GERALDO CASTANEDA-LERMA knew that as a result of mental disease and defect [A.T.] was at the time of said sexual assault incapable either of appraising the nature of the act or of resisting it.

Therefore, the indictment alleged the sexual assault was without consent based on section 22.011(b)(4) of the Texas Penal Code.[1] TEX. PEN. CODE ANN. § 22.011(b)(4) (Vernon Supp. 2007).

The application paragraph of the jury charge permitted the jury to find Castaneda-Lerma guilty if the jury found that he caused his male sexual organ to penetrate A.T.'s female sexual organ without A.T.'s consent. Because the application paragraph did not track the language of the indictment and apply the theory by which Castaneda-Lerma's actions were "without A.T.'s consent," the jury was required to rely on the definitions portion of the jury charge to determine whether Castaneda-Lerma's actions were without A.T.'s consent. In the definitions portion of the jury charge, the jury was charged as follows:

> Sexual assault is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force or violence; or the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it.

Thus, unlike the indictment which required the State to prove lack of consent based on section 22.011(b)(4), i.e., lack of mental capacity to consent, the jury charge permitted the State to prove lack of consent under either section 22.011(b)(4) or section 22.011(b)(1), i.e., consent compelled by physical force or violence. Because the jury charge permitted the jury to convict under a statutory basis for showing lack of consent that was not alleged in the indictment, error existed in the jury

---

[1] Section 22.011(b) provides, in pertinent part, that a sexual assault "is without the consent of the other person if:

    (1)    the actor compels the other person to submit or participate by the use of physical force or violence; [or]

****

    (4)    the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it;"

TEX. PEN. CODE ANN. § 22.011(b) (Vernon Supp. 2007).

charge. *See Jiminez v. State*, 727 S.W.2d 789, 792 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (noting indictment must allege specific subsection in section 22.011(b) to authorize conviction).

Castaneda-Lerma expressly objected to the inclusion of section 22.011(b)(1)'s lack of consent theory in the jury charge as follows:

> MR. PICKELL: Defendant would object to the second sentence in paragraph – paragraph one or the first part of that sentence: "Sexual assault is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force or violence." We would object to that as that was not alleged in the indictment.
>
> THE COURT: Court's going to overrule your objection.

Because Castaneda-Lerma timely objected to the error in the charge, he is only required to show "some harm" in order to be entitled to a reversal. *Ngo,* 175 S.W.3d at 744. We assess the actual degree of harm in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

Because the charge included a second statutory basis for establishing lack of consent, the jury was not required to unanimously find that A.T. was incapable either of appraising the nature of the act or resisting it as a result of a mental disease or defect. Instead, some of the jurors could have determined Castaneda-Lerma was guilty based on A.T.'s incapacity to consent while those who believed A.T. had the mental capacity to consent could have determined Castaneda-Lerma was guilty because he used physical force or violence to compel A.T. to submit or participate. By permitting the State to establish guilt under alternative theories, the charge lessened the State's burden of proof.

Although the evidence in regard to A.T.'s capacity to consent was conflicting, the jury was presented with compelling evidence that force was used during the incident. Dr. Carol Ann Andrus, who examined A.T. at the Kimble County hospital, stated that A.T. was taken to the emergency room because she had experienced heavy vaginal bleeding for two hours. Dr. Andrus performed an external genital exam on A.T. and noted large clots of blood present which indicated some sort of trauma. Dr. Andrus testified that it would be "fairly unusual in an alleged sexual assault to see much, if any blood" present. Because the loss of blood caused a drop in A.T.'s blood pressure, she was transferred to the hospital in Kerrville by EMS. Dr. Andrus further testified that she had observed other sexual assault victims during the course of her practice, and A.T.'s case "was the worst case [she] had ever seen."

Georgette Robbins was a sexual assault nurse examiner for the Kerrville hospital. After examining A.T., Robbins determined that A.T. would need assistance from a gynecologist because she had an arterial bleed that was pulsating and would require surgery to repair. Pictures of A.T.'s laceration were introduced into evidence. The surgical procedure took approximately fifty minutes, and A.T. required eight stitches to repair the laceration. In comparison to other surgeries, Robbins testified that A.T.'s injury was very traumatic - "the only time I've ever seen this in my career." Robbins stated that the injury was caused by the penis entering the vagina, hitting the vaginal wall, and causing the tear.

Finally, the State emphasized the evidence of force during its closing argument, noting, "The next witness you heard testimony from was Georgette Robbins, and she described the four centimeter tear in the vagina that was consistent with forcible sexual assault." "Georgette also said this was a very traumatic injury, and this was the most serious she has ever seen in her 20 some odd years delivering babies and assisting in surgeries in the OB/GYM at Sid Peterson Memorial

Hospital." The State then emphasized that the jury could convict under either theory with regard to lack of consent, arguing:

> Even if you think that [A.T.] had the mental capacity to consent, you still have sexual assault being without the consent of the other person in the first part of the definition, "if the actor compels the other person to submit or participate by the use of force or violence."

> You have enough evidence. You have beyond a reasonable doubt of evidence that [A.T.] didn't consent to it even if she could legally consent to it. Do you think that she consented to it?

> Her testimony to the nurses and to different nurses was that he got her from behind and grabbed her and forced herself [sic] on it. You've also got testimony in this transcript as well that Berta [A.T.'s sister] said that [A.T.'s] shoulders were sore from that force.

> That's what we're talking about. We're talking about consent, her legal capacity to consent; and even if you don't go that way, you've still got that she didn't consent.

After defense counsel gave his closing argument, the State again emphasized the two alternative theories for finding lack of consent as follows:

> Now, Mrs. Ahlschwede got into this a little bit, and I want to go into [it] a little bit deeper. If you believe from the evidence beyond a reasonable doubt that this poor little girl, this poor little handicapped, poor little retarded girl was physically and forcibly raped out there by that trash can, you don't even need to think about consent or what her mental picture or attitude or capabilities was [sic]. If you think she was physically raped, consent is not the issue.

> It's only – and that's the reason we had the testimony because we knew that Berta and this little girl were going to come in here and try to tell you that, no, it was by consent. So that's the reason we've been having to fight this consent issue.

> But I think the evidence is sufficient right off the bat when you go back there to the jury room, and whoever the foreman is says, How many of you think this little

girl was physically sexually assaulted, raise your hand. If you've got 12, that's it. You don't even have to think about what her mental picture was.

Therefore, not only did the State emphasize the two possible theories for finding lack of consent, the State encouraged the jury to convict by finding that Castaneda-Lerma compelled A.T. to submit by physical force or violence without finding that she did not have the mental capacity to consent.

Given the nature of the charge error, the state of the evidence, and the prosecutor's emphasis of the error, we hold Castaneda-Lerma has shown some harm from the error in the jury charge. Accordingly, we sustain his first issue.

Castaneda-Lerma also asserts several other issues; however, we need only address his challenge to the legal sufficiency of the evidence as that issue is a rendition issue.[2] *See* TEX. R. APP. P. 47.1 (opinion should be brief as practicable and only address issues necessary to final disposition); *Perrero v. State*, 990 S.W.2d 896, 899 (Tex. App.—El Paso 1999, pet. ref'd) (noting appellate court reversing trial court's judgment on a dispositive issue need not address other remand issues). Castaneda-Lerma contends the evidence was legally insufficient to establish that as a result of a mental disease or defect A.T. was at the time of the sexual assault incapable of appraising the nature of the act or of resisting it.[3] We disagree. When a party attacks the legal sufficiency of the evidence, we view the evidence in a light most favorable to the verdict and determine whether any

---

[2] Our failure to address these issues is no indication of whether or not the trial court erred in admitting the challenged evidence; however, we note that this court has overruled issues challenging the admission of a medical history given to a sexual assault nurse examiner as hearsay on a number of occasions. *See, e.g., Ezell v. State*, No. 04-06-00198-CR, 2007 WL 2778919, at *6-7 (Tex. App.—San Antonio Sept. 26, 2007, no pet.) (not designated for publication); *Silva v. State*, No. 04-05-00824-CR, 2006 WL 3612818, at *2 (Tex. App.—San Antonio Dec. 13, 2006, no pet.) (not designated for publication); *McDonald v. State*, No. 04-05-00128-CR, 2006 WL 2417177, at *2-3 (Tex. App.—San Antonio Aug. 23, 2006, no pet.) (not designated for publication); *Perez v. State*, No. 04-05-00212-CR, 2006 WL 542668, at *2 (Tex. App.—San Antonio Mar. 8, 2006, no pet.) (not designated for publication).

[3] We note that this lack of consent theory would have been the only theory included in a hypothetically correct jury charge which we use in considering the sufficiency of the evidence. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this case, the jury heard evidence from various medical personnel describing A.T. as childlike and functioning at the level of a middle school age child of 12. One of the investigating officers, who had known A.T. for many years, testified that she is disabled and cannot fully sustain a normal, everyday life. The other investigating officer stated A.T. seemed a bit slow and appeared to have some mental retardation. A psychiatrist who evaluated A.T. testified that A.T. could not consent to have sex under the circumstances with which she was confronted. Furthermore, A.T. testified, and the jury was able to observe her and evaluate her abilities. Finally, Castaneda-Lerma had known A.T. for at least two years; therefore, the jury could have inferred that he had observed the same behavior observed by the testifying witnesses and had knowledge of A.T.'s mental condition. Therefore, the evidence was legally sufficient to establish that Castaneda-Lerma knew that as a result of a mental disease or defect A.T. was at the time of the sexual assault incapable of appraising the nature of the act or of resisting it.

## CONCLUSION

The trial court's judgment is reversed, and the cause is remanded to the trial court for a new trial.

Phylis J. Speedlin, Justice

DO NOT PUBLISH