202-15

ORIGINAL

No. _____

IN THE

COURT OF CRIMINAL APEALS

OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 10 2015

Abel Acosta, Clerk

MICHAEL DAVID WILLIAMS

PETITIONER

VS.

THE STATE OF TEXAS

RESPONDENT

FILED IN
COURT OF CRIMINAL APPEALS

MAR 10 2015

Abel Acosta, Clerk

Petitioner in cause No. D 34, 123-CR from the 13th Judicial District Court of Navarro county, Texas and for Appeal No. 07-14-00128-CR from the Court of Appeals for the Seventh District of AMARILLO TEXAS.

## PETITION FOR DISCRETIONARY REVIEW

MICHAEL DAVID WILLIAMS

TDCJ-CID# 1913738

CLEMENTS UNIT

9601 SPUR 591

AMARILLO, TEXAS. 79107

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENS

TABLE OF CONTENS     I

INDEX OF AUTHORITIES     II

STATUTES     II

STATEMENT OF THE CASE     I

A. PROCEDURAL SUMMARY     1

B. FACTUAL SUMMARY     1,2,3,4

GROUND FOR REVIEW     5

    GROUND ONE     5

The Seventh Court of Appeals, in reviewing Mr.Williams First Ground of Error, failed to consider that Petitioner was Egregiously harmed by the Jury Charge erroneously stated the elments of the offense and aallowed the Jury to convict Petitioner for act or acts not Authorized by the relevant statute or Substantial RightT.R.A.P.44.2(b) and Due Process, Due Course of Law, 5ht,6th,14, Amendment.

I. AUTHORITIES FOR GROUND ONE     5

II. ARGUMENT FOR GROUND ONE     5-18

HARM ANALYSIS     6,7

PRAYER FOR RELIEF     19

CERTIFICATE OF SERVICE     19

INMATE DECLARATION     19

# TABLE OF AUTHORITIES

ALMANZA V. STATE, 686 S.W.2d 157, 171 (Tex.Crim.App.1985)(op. on reh'g)   6,7

ABDNOR V. STATE, 871 S.W.2d 727 (Tex.Crim.App.)   7

BARRIOS V. STATE, 283 S.W.3d 348,350 (Tex.Crim.App.2009)   7

NEAL V. STATE, 256 S.W.3d 264,278 (Tex.Crim.App.2008)   6

NGO V. STATE, 175 S.W.3d 738, 743 (Tex.Crim.App.2005)   6

SWEARINGEN V. STATE, 270 S.W.3d 804, 808 (Tex.App.-Austin 2008, pet. ref'd)   6

TAYLOR V. STATE, 332 S.W.3d 483, 489 (Tex.Crim.App.2011)   7

## STATUTES:

TEX. PENAL CODE ANN. §21.02(b)   6

TEX. PENAL CODE ANN. §21.02(c)(3)   6

TEX. PENAL CODE ANN. 21.11(a)(1)   6

TEX. PENAL CODE ANN. 22.02   6

TEX. RULE APPELLAN PROCEDURE 44.2(b) SUBSTANTIAL RIGHT   6,7

FOURTH, FIFTH, SIXTH, FOURTEENTH, AMENDMENT

## STATEMENT OF THE CASE

### A. PROCEDURAL SUMMARY:

Michael David Williams, Petitioner, was indicted on January 26, 2012. By a Grand Jury in Navarro County, for "Continuous Sexual Assult of a Child". A Jury Trial was commence on January 6th, 2014, and finalized on January 10th,2014 a Guilty verdict. The Court assessed punishment on February 28th, 2014 Of Ninety nine (99) years in Prison. A Notice of Appeal was filed March 7th, 2014. The Appellant Brief was timely filed on August 18th,2014. The State timely filed there Brief on September 9, 2014. The Seventh Court of Appeals Rendered Their Judgment of Affirm on January 29, 2015.

### B.FACTIAL SUMMARY:

On the last day of school in May in 2010, Billie Williams told Petitioner that their daughter had told her he had touched her inappropriately. Petitioner came home from work and they both confronted the child. The child related the accusation again in the presence of both parents who questioned her furhter about the accusations. (3Report's Record [RR] 208-212). In response to a specific question regarding the color of the "stuff" that came out of Petitioner's penis, she responded that it was "green." (RRv3 p211). For this and other reason her mother did not believe the accusation and did not report it to the police.(RRV3p211).Because their relationship was deteriorating previously, B.Williams moved out with the kids a week later. (RRv3p212-213). B.Williams allowed her daughter to stay with Petitioner on weekends over the summer and still did not report the allegation. On August 5, 2010,

1.

B.Williams went to the sheriff's department and made a report.The then nine (9) year old child was immediately interviewed at the Navarro County child Advocacy Center, but could not or would not give any details of the offense. The interview, Lydia Bailey,managed to get her to indicate, through pointing to anatomically correct darwings, cryptic writing, and gestures, that her father had touched her on her stomach between her belly button and her vagina, and on her upper left thigh below her butt. (RRv3p159-169; RRv3p167; State's Exhibit No.21 [on what appears to be the second page]). However, when pressed to give any sort of detail, the child told Bailey to ask her mother. (RRv3p169). She gave no dates and no indication of how many times. (RRv3p168-169).B.Williams gave two written statements which attempted to establish a timeline and locations for the alleged abuse. (RRv6State's Exhibits 23 and 24). Law enforcement officers testified that the locations were in Navarro County and that they went to the locations and observed some of the physical evidence described by B.Williams in her statements such as the presence of legal pornography in the house and the rabit cages in the barn. At Petitioner trial, although the child did testify, she was unable to relate virtually any details. The prosecutor was able to pull out of her that her dad touched her on the breasts, which she called her bad spot , her vagina, which she called her middle spot, and her butt which she reluctantly called her back bad spot. (RRv4p13-22). she also testified that on the same occasion, her father made her touch his peniss which she called his middle spot (RRv4p31). Eventually, she testified that it was in her mother's room on the

2.

bed when her mother was at work.(RRv4p22). She testified that this happened when she was in kinderarten which would have been prior to September 1,2007. (RRv4p20). Her mother testified that she was in kindergarten in the 2006-2007 school year. (RRv3,185). The only possible substantive evidence of any of the allegations contained inthe indictment came from the child's mother, Billie-Williams, who testified as the outcry witness. B.Williams testified that after being caught trying to kiss a girlfriend, her daughter told her that she did not see anything wrong with it because her father "touches her bad spot". (RRv3p207). Although in Court, the child identified herbreasts as her bad spot and vagina as her middle bad spot, B.Williams testified that she believed her daughter was referring to her vagina. (RRv3p207,208;RRv4p13,14,19;RRv6 State's Exhibit No.20). B.Williams futher testified that her daughter told her that he put his mouth on her bad spot and made her touch his bad spot. (RRv3p208). She testified that she did not believe her daughter and that she and Petitioner questioned her about it later that evening when Pettioner came home from work. (RRv3p208-212). B.Williams said that the child had said her father said "that's how you know when daddy's happy... when the stuff comes out". (RRv3p210). When asked what color the "suff" was, the child stated it was green." (RRv3p211). This cause B.-Williams to futher disbelieve the child. RRv3p211. She did not report the supposed outcry to the police and she stayed with the Petitioner for another week. (RRv3p212). She testified that she was planning to leave anyway because the relationship was deteriorrating before this incident and she knew he was getting redy

3.

to ask them to leave. (RRv3p212-213). After they separated, she continued to allow her daughter to stay with the Petitioner on weekends. She testified that over the summer she came to believe her daughter because she kept telling the same thing and it never changed. (RRv3p216). B.Williams said that her daughter gave her details but the only details that she testified about were that "it" happened once in the pasture while checking the fence line when they were living in Bazette. (RRv3,216); that while tending to the rabbits, he would place her on a show table in the rabbit pen at their house in Bazette (RRv3p217); and she said it would happen at her Uncle James's house while they were over there (RR-3p217). She testified that the child never told her how many times "it" had happen, how old she was when it began or how old she was when it stopped. (RRv3p217). B.Williams testified that her daughter told her that Petitioner had touched her over her clothing on her bad spot when he would go in her room to kiss her goodnight. Again, in court, the child referred to her breasts as "bad spot". This happened at the house in Corsicana. (RRv3p217-218). The familly lived in Corsicana from November 2009 until B.Williams and the kids moved out in June of 2010. (RRv6State's Exhibit No.23 and 24). The only other evidence introduced regarding the actual acts alleged were the witness statement of Billie Williams (RRv6 State's Exhibit No.23). In these statements, B. -- Williams attempts to give more details and provide a timeline, but not much is added. Petitioner testified and denied the accusation.

4.

# G R O U N D   O N E

The Seventh Court of Appeals, in reviewing Mr.Williams First Ground of Error, failed to consider that Petitioner was Egregiously Harmed by the Jury Charge erroneously stated the elements of the offense and allowed the jury to convict Petitioner for act or acts not authorized by the relevant statute or substantial Right Tex.R.App.P.44.2(b) nad DUE Course of LAW .

## AUTHORITIES AND ARGUMENT

### I. AUTHORITIES:

Petitioner was egregiously harmed because the Jury Charge erroneously stated the elemenants of the offense and allowed the jury to convict Petitioner for an act or acts not authorized within the continuous sexual assault of a child statute. Petitioner was harmed in that the erroneous charge by allowing the jury to convict Petitioner for touching, including through clothing the breasts of a child, which act is specifically excluded as an act of sexual abuse for the purposes of continuou sexual assault, went to the very basis of the case and made it singnificantly easier for the jury to convict Petitioner. Based on the nature of the error in the charge, the lack of Substantial evidence and the entire record, Petitioner was denied a fair and impartial trial and as such he was egregiously harmed.

### II. ARGUMENT:

Petitioner was egregiously harmed because the jury charge erroneously stated the elements of the offense and allowed the jury to convict Petitioner for act or acts not authorized by relevant statute.

5.

## STANDARD OF REVIEW

Claims of jury charge error under the two-prong test set out in Almanza V. State, 686 S.W.2d 157, 171(Tx.Crim.App.1985)(op. on reh'g), see Swearingen v. State, 270 S.W.3d 804, 808 (Tex.App.-Austin 2008, pet. ref'd). It must first be determined whether error exists. Ngo V. State, 175 S.W.3d 738, 743 (Tex. Crim.App.2005); Swearingen, 270 S.W.3d at 808. If error exists, the court should then evaluate the harm caused by the error. Ngo, 175 S.W.3d at 743; Swearingen, 270 S.W.3d at 808. The degree of harm required for reversal depends on whether that error was preserved in the trial court. When error is preserved in the trial court by timely objection, the record must show only "some harm". Almanza, 686 S.W.2d at 171; Swearingen, 270 S.W.3d at 808. By contrat, unobjected-to charge error requires reversal only if it resulted in "egregious harm." or substantial Right erroneous unreliable jury charge.

see T.R.APP. 44.2(b) Neal V. State, 256 S.W.3d 264, 278 (Tex.Crim.App.2008).

## ERROR IN THE CHARGE

Here, the error in the charge is clear and certain. The charge misstates the elements of the offense by including within the acts constituting sexual abuse indecency with a child by the touching over the clothing the breasts of the child. This is clearly in error as the continuous sexual assault of a child statute specifically removes the touching of the breasts as a predicate act. A person commits the offense of continuos sexual abuse of a young child, as applicable here, if (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 of age or older and the victim is a child younger than 14 years of age. TEX. PENAL CODE ANN. § 21.02(b). An act of sexual abuse includes, as relevant here, an act of aggravated sexual assualt under TEX. PENAL CODE ANN. 22.02; TEX. PENAL CODE ANN. §21.02(c)(3). further, an act of indecency with a child under TEX. PENAL CODE ANN. 21.11(a)(1) is also consider an act of sexual abuse if the actor committed the offense in a manner other the touching, including touching through clothing, the breasts of a child. TEX. PENAL CODE ANN. §21.02(c)(3) (emphasis added).

## HARM ANALYSIS:

Petitioner concedes that he did not object to the form of the charge, so the "egregious harm" standard applies or the Substantial Right should be applied.

6.

to the Due Process Violation. Reversal is required only if the charge error was " so egregious and created such harm that the defendant 'has not had a fair and impartial trial.' "Barrios V. STate, 283 S.W.3d 348, 350 (Tex.Crim. App. 2009)(citing Almanza, 686 S.W.2d at 171). The Court of Criminal Appeals has articulated the factors to be consider in making such a determination. "in determining whether [P]etitioner was deprived of a fair and impartial trial, We review 'the entire jury charge, the state of the evidence, including the -- contested issues and weight of probative evidence, the argument of counsel and any other relevant information by the record of the trial as a **whole**.' Taylor v. State, 332 S.W.3d 483, 487 (Tex.Crim.App.2011)(quoting Almanza, 686 S.W.2d at 171)." Further the Court of Criminal Appeals has provided guidance as **the** kind of error requiring reversal in such cases. "We will examine 'any part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused.' "Id. at 489-90. "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a right, vitally affect the defensive theory, or make acase for conviction clearly and significantly more persuasive. Id. at 490."(quoting Abdnor V. State, 871 S.W.2d 726). Since the jury charge is essential to the jury deliberations, the charge must include accurate statement of the law. Id at 727. Its absence impairs the right to trial by jury and therefore, by deffinition, is "calulated ot injure the rights of the defendant". Id at 731. "It is a Judges Duty to instruct the Jury on the Law applicable to the case exist - even when the defence counsel fails to object to inclusions or exclusions in the charge." ( --- Taylor, 332 S.W.3d 483 at 484). quoting (Abdnor 871 S.W.2d 727)." When the --- trial Judge fails to correctly charge the jury on applicable Law, the integrity of the verdict is called into doubt.

## THE ENTIRE JURY CHARGE:

In the instant case, the entire charge is entirely messed up. The first metion of the offense in the charge is in the paragraph entitled "Accusation". There , the charge correctly states that Petitioner is accused of committing two or

7.

more acts of sexual abuse. These acts are then listed as indecency with a child by Petitioner touching the genitals of the child, indecency with a child by causing the child to touch the genitals of Petitioner, and aggravated sexual assault by causing the sexual organ of the child to cause the mouth of Petitioner. The next paragraph isentitled "Relevant Statutes". This paragraph incorrectly states that indecency with a child constitutes an act of sexual abuse if the defendant engaged in sexual contact by touching anus, breast,or any part of the genitals of the child, (emphasis added). Next, in the "Application of Law to Facts" paragraph, the charge list four elements. In the first element, the indecency allegations are specifically listed correctly as described above. However, the jurors are theninstructed that with regard to the acts of sexual abuse which are entitled indecency with a child. The instructions state that the state can prove those acts if the state proves any touching- including touching of the breast. Quite obviously, this is acomplete misstatement of the law. Touching of the breast is specifically excluded from the cotinuous sexual assault statute. As expected, the jurors were instructed that they need not agree on the specific acts or the exact dates of such acts. This statement, while correct, could concievably serve to suppress any confusion as to whether they were allowed to consider any acts of touching, as an act of sexual abuse. Also concerning is fact that the definition of indecency with a child is repeated twice in lesser included offense paragraph and that definition section of these lesser included offense also the touching of breasts. Further, in each of these two lesser included offense section, the instrutions state that sexual contact or touching may be throuq clothing. Although with respect to the indecency with a child statute itself these instructions correct , the language regarding the touching of the breast is repeated twice to indecency with a child and provides added emphasis to the error contained

8.

in the above reference portions of the instructions on continuous sexual assault. Given the repeated reference to touching of the breasts as an act of sexual abuse, it would be easy for the jurors to be misled that the touching of the breasts, even through clothing constitutes an act of sexual abuse leading to continuos sexual assault. At the vey least, the charge, when viewed in its entirety, is meleading as to whether the jurors could convict Petitioner of continuous sexual assault for twice touching the breasts of the child through clothing. Even worse, the application paragraph specifically authorizes such a conviction. (CR 75-86).

**THE STATE OF THE EVIDENCE:**

The jury charge error is especially troubling in light of the lack of credible evidence in this case. As noted in the statement of facts above, these charges were brought in the midst of a divoce case. The child's mother reported the offense to police months after she was alllegedly told of the abuse by her daughter. The then nine (9) year old child was immediately interviewed but could not or would not give any details of the offense. the interviewer, Lydia Baily, managed to get her to indicate, through pointing to anatomically corr-ect drawings, cryptic writing, andgestures, that her father had touched on her stomach between her belly button and her vagina, and on her uppper left thigh below her butt.(RRV3p159-69;RRv3p167; RRv6 State's Exhibit No.21[on whay appears to be the second page]). However, when pressed to give any sort of detail, the child told Bailly to ask her mother.(RRv3p169). The cild gave no dates and no indication of how many times.(RRv3p168-69). Altough the child did testify, she was unable to relate virually any details. The prosecutor was able to pull out of her with the use of anatomically correct drawings that her dad touch her on the breasts, which she called her bad spot, her vagina, which she call-ed her middle spot, and her butt which she reluctantly called her bad spot. (RRv4p13-22;RRv6 State's Exhibit No.21). she also testified that on the same

9.

occasion, her father made her touch his penis which she called his middle spot (RRv4p31). Eventually, she testified that it was in her mother's room on the bed when her mother was at work.(RRv4p22). She testified that this happen when she was in kindergarten which would have been proir to September 1,2007. (RRv-4p20). Which is in relevance to the statute at hand..Her mother testified that she was in kindergarten in the 2006-2007 school year.(RRV3p185). As such, as the jury was instructed, this incident was clearly an extraneous act and could not be used as substantive evidence on which to base their conviction.(CR77). Further, this incident was also prior to the date range alleged in the indictment.as well.as before this statute comes into effect, facts the jury could have consider in Petitioner's favor.

The only possible substantive evidence of any of the allegations caontained in the indictment came from the child's mother, Billie Williams, who testified as theuotcry witness. B.Williams testied that after being caught trying to kiss a grilfriend, her daughter told her that she did not see anything with it because her father "touches her bad spot".(RRV3207). Although in court, the child identified her breasts as her bad spot and her vagina as her middle bad spot, B.Williams testified that she believed her daughter was referring to her vagina.(RRv3p207-08;RRv4p13,14,19;.RRv6 State's Exhibit No.20). B.Williams further testified that her daughter told her that he put his mouth on her bad spot and made her touch his bad spot. (RRv3p208). She testified that she did not believe her daughter and that she and Petitioner questioned her about it later that evening when Petitioner came home from work.(RRv3p208-212). B.Williams said that the child had said her father said "that's how you know when daddy's happy.... When the stuff comes out".(RRv3p210). When asked what color the"stuff" was, the child stated it was green. (RRv3p211). This cause B.Willams to further disbelieve the child.(RRV3p211). She did not report the

supposed outcry to the police and she stayed with Petitioner for another week.(RRv3p212). She testified that she was planning to leave anyway because the relationship was deteriorating before th this incident and she knew he was getting ready to ask them to leave.(RRv3p212-13). After they separated, she continued to allow her daughter to stay with Petitioner on weekends. She testified that over the summer she came to believe her daughter because she kept telling the something andnever changed.(RRv3p216). B.William ms said that her daughter gave her details but the only details that she testified about were that "it" happened once in the past ture whike checking the fence line when they were living in Baze tte.(RRv3p2160); that while tending to the rabitts, he would place her on a show table in the rabitt pen at their house in Ba zette(RRv3p217); and she said it would happen at her Uncle James' house while they were over there (RRv3p217). She tesified that the child never told her how many times "it" had happen, how old she was when it began or how old she was when it stopped.(RRv3217 ). B.Williams testified that her daughter told her that Petition er had touched her through her clothing on her bad spot when he would go in her room to kiss her goodnight. Again, in court, the child referred to her breasts as "bad spot". This happenat the house in corsicana.(RRv3p217-18). The family lived in Corsicana from November 2009 until B.Williams and the kids moved out in June of 2010.(RR¢ State's Exhibit No.23)24). The only other evid ence introduced regarding the actual acts alleged were the writt en statements OF Billie Williams(RRv6 State's Exhibit No.23). In

11.

these statements, B.Williams attempts to give more details and provide a timeline, but not much is added. All of the evidence, both testimonial and from the statements, is summarized below: Based on the testimony of the child, Bailey, B.Williams and B.Williams, written statements, the jury had serval acts to consider consider.

1. Thouching of the breasts/bad spot

a. Testimony of the child-kindergarten-August 2006-June 2007- prior to statute and indictment dates

b. Testimony of Bailey-no outcry as to breasts

c. Testimony of B.Williams – in corsicana while kissing goodnight -ht within statutory and indictment period

d. Statement of B.Williams – State's Exhibit No. 23–

    i. "she said he would touch her private areas over clothes in Corsicana while kissing her goodnight"

    ii. They lived in corsicana from November 2009 through the first week of June 2010.

e. Conclusion – There was some evidence admitted through B.Williams testimony and written statement that Petitioner touched the child on the breasts over her clothes during the alleged timeframe and after the passage of the statute, but that evid evidence was in dispute of contradicting evidence from the ch child's own testimony and the testimony of Lydia Bsiley regarding the CAC interview.

2. Touching of genitals/bad spot with hand

a. Testimony of child – kindergarten-August 2006-June 2007-pri prior to statute and indictment dates and not to be used as

12.

Substantive evidence on which to base their conviction.

b. Testimony of Bailey - not an outcry because child only indic= ated touching between the belly button and the vagina, also n no details, no dates, no way to know when

c. Testimony of B.Williams -

    i. in Corsicana while kissing goodnight - with statutory and indictment period

    ii. in general - with no dates or details

d   Also in B.Williams written statement as described above.

e. Conclusion - As above, there was some evidence admitted thro= ugh B.Williams! Testimony and written statement that Petition= ner touched the child on the vagina over her clothes during the alleged timeframe and after the passage of the statute but that evidence was in dispute because of contradicting eviden= ce from the child's own testimony and the testimony of Bailey Lydia regarding the CAC interview.

3. Causing child's hand to touch his penis/bad spot

a. Testimony of child - Kindergarten- August 2006- June 2007- prior to statutory and indictment dates and not to be used as substantive evidence on which to base their conclusion

b. Testimony of Bailey - no outcry as to this allegation

c. Testimony of B.Williams

    i. In general with no dates

    ii. The child provided incorrect details: "he said" that is what happens when daddy is happy." But when questioned if stuff came out and what color it was she stated "green".

d. This is also in B.Williams! written statement but no dates or

13.

timeframe reference were provided.

e. Conclusion — While there is some evidence that this allegation occurred there is no timeframe ever reference. Further the details provided suggest that the child could be lying. At no worst, there is legally insufficint evidence to support this allegation and at best, the evidence is in dispute.

4. Aggravated Sexual Assault — Petitioner's mouth contacting chi child's genitals/bad spot

a. Testimony of child — none

b. Testimony of Bailey — none

c. Testimony of B.Williams

   i. IN general but no dates or details

   ii. possible connection with a time when they had rabbits in Bazette (RRv3p219)

d. B.Williams' statement

   i. puts the rabbit timeframe anytime during or after summer 2007 which could before the statutory period although it is unclear (RRv6 State's Exhibit No24)

   ii. B.Williams' written statement does not specify that any- happen to the child while in the rabbit barn other than her father showing her porn magazines. (RRv6 State's Exhibit No.23)

   iii. Also a possible link with a time when B.Williams said the child talk about an incident at her Uncle's house. but the link is only provided in the written statement and it is unclear whether B.Williams is saying that the child said that her father "licked" her private part

14.

during that incident or if B.Williams is describing the sequence of what her child told her next as opposed to what happen next.(RRv6 State's Exhibit No.23).

iv. The timeframe at the Uncle's house has been established to be Ferbruary or March of 2010, which is after the time frame alleged in the indictment.(RRv6 State's Exhibit No. 24).

e. Conclusion- this is hotly contested because the child did not tell the CAC interviewer anything about it nor did she testify to this incident. Furhter, if the jury believed this incident occurred in the rabbit pen, then they could have believed it occurred in 2007, even prior to the effective date of the relevant statute. if that is the case, then the jury could have also been unconvinced that the evidence established that this incident happened within the alleged timeframe at all because it is unclear whether B.Wiliams' statement alleges that the genital mouth contact took place at the Uncle's house and there is no timeframe reference given except for (possible, arguably) that time, and that timeframe is after the timeframe alleged in the indictment.

Some additional details were provided but they do not seem to be of any help in determining which alleged acts occurred or when :

1. She tolld me "it" happen once in the pasture checking the fence line in Bazette(RRv3p216)

2. She said in Bazette that while they were tending to the

15.

rabbits they had a show table that he would place her on (RRv3p217). Later in her testimony, it is arguable that B.i.t. Williams was referring to this incident when she said "she described it as he would take her pants off and her panties off and place her on the table and put his mouth on her bad spot.(RRv3p219)

3. She talked about going over to his brother's house Uncle James, while they were away, and "it" would happen over there (RRv3p2170

4. Never did she indicate what the "it" was and it is unclear whether the "it" refers to the oral/genitals contact, the child touching Petitioner penis, Petitioner touching the child "bad spot". (RRv3p216-17)

5. While B.Williams testified that she "knew" that when her daughter said "bad spot", it referred to vagina and penis, when the child testified, she wanted to use the term "bad spot" for breasts, vagina, butt and penis. (RRv4p13-20;RRv6 state's Exhibit No.20 and 21)

6. In her written statement, B.Williams said that the child told her she was touchied on her "private areas."(RRv6 State's EXhibit No.23)

7. B.Williams said her daughter did not tell her how may times, how many times at each location, or how old she was when "it" happened.(RRv3p217).

To summarized, there was contradictory evidence as to each potential act of sexual abuse. The child herself provided no

16.

evidence that anything occurred during the timeframe alleged. By her own testimony, the incident she described happen while she was in Kindergarten which was prior to September 1st of 2007. The testimony of Bailey does not establish any of the alleged acts. Although the child indicated her father had touched her in the area no one should touch, her marking on the darwing indicate that he touched her on stomach and on her thigh, not on her vagina as alleged. Although B.William's statements and testimony provide some details and dates, it is unclear when and where B.Williams claims the child is alleging that specific acts happed. It is also in Petitioner's favor that at least one of her details is clearly wrong. The child's testimony in court that when Petitioner touched her while she was in Kindergarten, his hand was "still" also undermines her crreibility.(RRv4p26,31). The clearest evidence that anything occurred during the time period alleged was the testimony and statement of B.Williams regarding the child's statement that Petitioner touch her on her bad spot/private areas when he would go in to her room and kiss her goodnight. The problem is that this allegation concludes the possibility that the child was referring to her breast when she said bad spot just as she did in court. And the jury very well could have believed that is exactly what she was saying. Further, they could have easily believed that the child was making up the touching of the penis incident because of the "green stuff" statement, and the there was insufficient evidence that the genital mouth contact occurred, if at all, during the timeframe alleged. certainly,

17.

in light of the evidence as a whole, the erroneous charge made it significantly easier for the jury to convict Petitioner.

## ARGUMENT OF COUNSEL

Admittedly, there is not much toargue with respect to arguments. Counsel for the state did not mention the breasts and instead focused on connecting the dots between the porn, the marital sex life of the Petitioner, his special relationship with his daughter and the alleged abuse. The Defendant having testied that the whole story was false, their argument did not focus on dates specific evidence for each incident, but on the idea, understandably , that it did not happen at all as that is really the only reason able trial strategy in this type of case.

## ENTIRE RECORD

When examining the entire record, there is something important to consider. This jury deliberated for seven (7) hours.(Clerk,s Record[CR]3). They sent out a note saying they were hopelessly deadlocked.(CR 92). Only after an Allen charge were they able to reach a verdict.(CR90). This was not easy case involving overwhelming evidence. The jurors had to work very hard and think for a long time to find the Defendant guilty. Considering the substantial error repeated over and over in the charge, an error that went to the very basis of the case- what acts constitute the offense charged, and considering the precarious stateof the evidence, and considering the lengthy deliberations, the deadlocked jury, and the necessity of an Allen Charge,clearly,Petitioner was egregiously harmed to the extent that he did not receive a fair trial.

18.

## PRAYER FOR RELIEF-

**WHEREFORE, PREMISES CONSIDERED,** Mr.Williams Prayes this Court Gant his Petition For Discretionary Review, and REVERSE and REMAND for New Trial.

_Michael David Willi_
MICHAEL DAVID WILLIAMS

T.D.C.J.-CID #1913718

CLEMNTS UNIT

9601 SPUR 591

AMARILLO, TEXAS.79107

## CERTIFICATE OF SERVICSE

I, MICHAEL DAVID WILLIAMS, do hereby certify that a true and correct copy of the above and forqoing Petition for Discretionary Review has been forward by United States Mail, Postage Prepaid, First Class, to the State Prosecutor, P.O. box 13046, Austin, Texas. 78711, On this the 27th day of February, 2015.

_Michael David Willi_
MICHAEL DAVID WILLIAMS

T.D.C.J.-CID # 1913738

## INMATE DECLARATION

I, MICHAEL DAVID WILLIAMS, T.D.C.J.-CID # 1913738, being presently incarcerated at the Bill Clements Unit of the Texas Department of Criminal Justice-Institutional Division in Potter County, Texas, verify and declare under penalty of perjury that the forqoing statement are true and correct to the best of my knowledge. Executed on this the 27th day of February, 2015.

_Michael David Willi_
MICHAEL DAVID WILLIAMS
T.D.C.J.-CID # 1913738

19.



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00128-CR

MICHAEL DAVID WILLIAMS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 13th District Court
Navarro County, Texas
Trial Court No. D34,123-CR, Honorable James E. Lagomarsino, Presiding

January 29, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Michael Williams, appellant, appeals his conviction for continuous sexual abuse of a child. Through two issues, he contends that the trial court erred in its charge to the jury and for assessing attorney's fees without evidence of appellant's ability to pay. The State concedes the accuracy of both issues but asserts that neither require reversal of the judgment. We agree with the State, modify the judgment, and affirm it as modified.

*Background*

Appellant was indicted for the following:

[Appellant] . . . did then and there, during a period that was 30 or more days in duration, to-wit: from on or about January 1, 2008 through January 30, 2010, when [appellant] was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age, namely, indecency with a child by engaging in sexual contact with [A.W.] by touching the genitals of [A.W.] with the intent to arouse or gratify the sexual desire of [appellant], indecency with a child by causing [A.W.] to engage in sexual contact by causing [A.W.] to touch the genitals of [appellant] with the intent to arouse or gratify the sexual desire of [appellant], and aggravated sexual assault by intentionally or knowingly causing the sexual organ of [A.W.] to contact the mouth of [appellant]. . . .

Appellant received a jury trial and the jury was charged as follows:

**Accusation**

The state accuses [appellant] of having committed the offense of continuous sexual abuse of a young child or young children. Specifically, the accusation is that [appellant] from on or about January 1, 2008 through January 30, 2010, when [appellant] was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age, namely indecency with a child by engaging in sexual contact with [A.W.] by touching the genitals of [A.W.] with the intent to arouse or gratify the sexual desire of [appellant], indecency with a child by causing [A.W.] to engage in sexual contact by causing [A.W.] to touch the genitals of [appellant] with the intent to arouse or gratify the sexual desire of [appellant], and aggravated sexual assault by intentionally or knowingly causing the sexual organ of [A.W.] to contact the mouth of [appellant].

Under the heading, **Relevant Statutes**, the trial court included the following:

Indecency with a child is an act of sexual abuse if the state proves, beyond a reasonable doubt, three elements. The elements are that—

1.    [appellant] engaged in sexual contact with another person by—

a. any touching of the anus, breast, or any part of the genitals of the person; or

b. any touching of any part of the body of the person with the anus, breast, or any part of the genitals of [appellant]. . .

Then in the paragraph entitled **Application of Law to Facts**, the trial court charged the jury on the following:

You must determine whether the state has proved, beyond a reasonable doubt, four elements. The elements are that –

1. [appellant] . . . from . . . January 1, 2008 through January 30, 2010, when [appellant] was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age, namely, indecency with a child by engaging in sexual contact with [A.W.] by touching the genitals of [A.W.] with the intent to arouse or gratify the sexual desire of [appellant], indecency with a child by causing [A.W.] to engage in sexual contact by causing [A.W.] to touch the genitals of [appellant] with the intent to arouse or gratify the sexual desire of [appellant], and aggravated sexual assault by intentionally or knowingly causing the sexual organ of [A.W.] to contact the mouth of [appellant].

The first and second alleged acts of sexual abuse are that [appellant] engaged in indecency with a child. Indecency with a child is an act of sexual abuse if the state proves, beyond a reasonable doubt, three elements. The elements are that—

a. [appellant] engaged in sexual contact with [A.W.] by—

(1) any touching of the anus, breast, or any part of the genitals of [A.W.]; or

(2) any touching of any part of the body of [A.W.] with the anus, breast, or any part of the genitals of [appellant]. . . .

The jury convicted appellant of the charged offense. He now appeals the conviction and the award of attorney's fees.

3

## The Law—Jury Charge

Appellant contends that the jury charge was wrong because it improperly included touching of the "breast" as a way for him to be convicted of continuous sexual abuse. The complaint, however, was not raised at trial. The State agrees that the inclusion was error, but because it was not raised below, it would require proof of egregious harm to warrant reversal. We overrule the issue.

Because the error was not first asserted below, we may reverse the judgment only if it caused appellant to suffer egregious harm. *Ngo v. State,* 175 S.W.3d 738, 743-44 (Tex. Crim. App.2005) (stating that when the defendant fails to preserve error at trial, the record must demonstrate "egregious harm" to warrant reversal). To rise to that level, the harm must affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *Id.* at 750. In other words, it must be of the ilk that denied the appellant a fair and impartial trial. *Id.* at 752. In determining whether the harm rose to such a level here, we review 1) the entire charge, 2) the state of the evidence, including the contested issues and the weight of the probative evidence, 3) the arguments of counsel, and 4) any other relevant information revealed by the record. *Id.* at 750 n. 48.

While it is true that the jury charge mentioned the touching of breasts as a form of indecency, the application paragraph actually described the indecent acts of which appellant was accused as the touching of genitals, "namely, indecency with a child by engaging in sexual contact with [A.W.] by *touching the*

4

*genitals* of [A.W.] with the intent to arouse or gratify the sexual desire of [appellant], indecency with a child by causing [A.W.] to engage in sexual contact *by causing [A.W.] to touch the genitals* of" appellant. (Emphasis added). And because we must presume that jurors follow the court's instructions, *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005), we can conclude that the jury was not free to simply pick and choose the type of indecent act upon which conviction could be founded.

To the foregoing, we add the evidence of guilt. Evidence of record indicates that appellant touched the child's breasts. Yet, ample evidence also revealed that he touched her genitalia and anus and he had her touch his penis. And, it cannot be said that an improper means of convicting appellant was somehow improperly interjected via the evidence of breast touching; this is so because extraneous bad acts like that were admissible to illustrate or explain the nature of the relationship between the child and appellant. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2014-2015). Simply put, the jury had before it more than enough evidence upon which to conclude, beyond reasonable doubt, that the indecency committed by appellant involved the touching of genitalia.

Furthermore, both the State and appellant focused upon the touching of genitalia (as opposed to the touching of the child's breasts) in their closing arguments. And, while the State also alluded to appellant touching his daughter's breasts, it was done in passing, with little repetition, and in the context of all the bad acts which his daughter accused him of committing.

5

Again, for there to be egregious harm, the error had to affect the very basis of his case, deprive him of a valuable right, or vitally affected a defensive theory. Considering the jury charge as a whole, the contested evidence, and closing arguments of counsel, we conclude that any harm appellant may have experienced due to the inaccurate charge was not of that ilk. It did not and does not rise to the level of depriving him of a fair and impartial trial.

### Attorney's Fees

In his second issue, appellant contends the trial court erred by ordering him to pay attorney's fees. The State agrees and requests that we modify the judgment by removing the obligation. The latter is the appropriate way to correct the mistake. *See Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013). Thus, we sustain the issue and modify the judgment to redact from it the obligation imposed on appellant to pay attorney's fees arising from the services provided by his appointed counsel.

The judgment is affirmed as modified.

Per Curiam

Do not publish.

6