PD-0757-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/22/2015 9:50:41 AM
Accepted 6/24/2015 9:50:14 AM
ABEL ACOSTA
CLERK

NO. _____

## IN THE COURT OF CRIMINAL APPEALS

RONALD ROBINSON                     PETITIONER

VS.

THE STATE OF TEXAS                  RESPONDENT

On appeal from cause number 01-14-00656-CR in the
First Court of Appeals and cause number 1036165
in the 209th District Court of Harris County, Texas

## PETITION FOR DISCRETIONARY REVIEW

KEN GOODE
P.O.Box 590947
Houston, Texas 77259
(409) 779-3631
State Bar # 08143200
Goodedkc@msn.com

FILED IN
COURT OF CRIMINAL APPEALS

June 24, 2015

ABEL ACOSTA, CLERK

## IDENTIFICATION OF THE PARTIES

Ronald Robinson                                  Petitioner
TDCJ-ID
Huntsville, Texas

Charles Medlin                                   Defense Attorney
Houston, Texas

Lance Long                                       Trial Prosecutor
Houston, Texas

Hon. Mike Wilkinson                              Trial Judge
Houston, Texas

Ken Goode                                        Appellate Attorney
Houston, Texas

Devon Anderson                                   Appellate D.A.
Houston, Texas

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

Comes Now Ronald Robinson, petitioner, and files this petition for discretionary review and in support shows as follows:

## STATEMENT OF THE CASE

Petitioner was charged by indictment with the offense of capital murder. Petitioner pleaded not guilty, and proceeded to jury trial. Punishment was set at life in prison after the jury found petitioner guilty as charged.

## STATEMENT OF PROCEDURAL HISTORY

In an unpublished opinion dated June 18, 2015 the First Court of Appeals affirmed the conviction and sentence.

No motion for rehearing was filed.

# TABLE OF CONTENTS

Statement of the Case.................................................................. 1

Statement of Procedural History.............................................. 1

Ground for Review

WHETHER THE COURT OF APPEALS ERRED BY NOT EXAMINING THE ABSENCE OF AN ACCOMPLICE WITNESS INSTRUCTION UNDER THIS COURT'S DECISION IN **ZAMORA V. STATE**

WHETHER THE COURT OF APPEALS ERRED BY HOLDING THAT PETITIONER WAS NOT PREJUDICED BY DEFENSE COUNSEL ELICITING TESTIMONY THAT THE CO-DEFENDANT HIT MAN ALLEGEDLY HIRED BY PETITIONER HAD BEEN FOUND GUILTY OF MURDER FOR HIRE.

Argument.................................................................................. 2

Prayer for Relief...................................................................... 4

Certificate of Word Count Compliance  .................................................. 5

Certificate of Service    .................................................................... .............. 5

## INDEX OF AUTHORITIES

CASES

**Ex Parte Hill,**
863 S.W.2d 488 (Tex. Crim. App. 1993)...................................................... 4

**Zamora v. State,**
411 S.W.3d 504 (Tex. Crim. App. 2013)...................................................... 2

## GROUNDS FOR REVIEW

WHETHER THE COURT OF APPEALS ERRED BY NOT EXAMINING THE ABSENCE OF AN ACCOMPLICE WITNESS INSTRUCTION UNDER THIS COURT'S DECISION IN **ZAMORA V. STATE**.

WHETHER THE COURT OF APPEALS ERRED BY HOLDING THAT PETITIONER WAS NOT PREJUDICED BY DEFENSE COUNSEL ELICITING TESTIMONY THAT THE CO-DEFENDANT HITMAN ALLEGEDLY HIRED BY PETITIONER HAD BEEN FOUND GUILTY OF MURDER FOR HIRE.

## ARGUMENT

### I.

On appeal petitioner argued that the trial court erred by not submitting an accomplice witness instruction as regards the testimony of Greg Fuentes under this court's recent decision in **Zamora v. State,** 411 S.W.3d 504 (Tex. Crim. App. 2013). Petitioner asserted that the trial court had a **sua sponte** duty to give an accomplice witness instruction because the evidence raised the issue under the theory that Fuentes was a party as a co-conspirator.

Petitioner cited the **Zamora** case, and pointed to the following evidence adduced at trial: (1) Fuentes was friends with the hit man (Mason); (2) Fuentes was the leader of a gang and committed criminal acts with Mason; (3) Fuentes

drove Mason to a meeting with petitioner where Mason told petitioner that the target was dead; (4) Fuentes observed petitioner pay off Mason for the contract hit; (5) Fuentes and Mason both were armed with firearms; (6) Fuentes helped Mason flee the country after the murder; (7) Fuentes gave Mason lodging in his residence when Mason returned from his flight to another country; (8) Fuentes admitted that Mason and another man came to his residence with ski masks, gloves, and guns after the murder; (9) Fuentes helped Mason dispose of the murder weapon; and (10) Fuentes and Mason traveled together to commit another murder together.

Incredibly, the lower court held that no question had been raised that Fuentes had committed an affirmative act promoting the murder for hire. Moreover, the lower court did not mention or address the evidence under **Zamora.**

The lower court's opinion is at odds with precedent from this court, thus warranting review.

## II.

On appeal petitioner also contended that defense counsel had rendered ineffective assistance which prejudiced him by eliciting testimony that Mason, the

3

hit man, had been convicted of murdering the complainant pursuant to a contract with petitioner.

The lower court held that petitioner was not prejudiced by such evidence. The lower court distinguished this case from **Ex Parte Hill**, 863 S.W.2d 488 (Tex. Crim. App. 1993), in which this court held that a defendant's right to a fair trial was prejudiced by defense counsel opening the door to evidence that a co-defendant has been convicted of the same offense.

Petitioner asserts that the lower court erred in its analysis and failure to follow precedent of this court, thus warranting review.

## PRAYER FOR RELIEF

WHEREFORE, petitioner prays that his grounds for review be granted.

Respectfully submitted,

/S/_____
KEN GOODE
P.O.Box 590947
Houston, Texas 77259
(409) 779-3631; SBN 08143200
Goodedkc@msn.com

4

## CERTIFICATE OF WORD COUNT COMPLIANCE

Relying on the word count function in the word processing software used to produce this document I certify that the number of words used in this petition for discretionary review is 700.

/S/_____
KEN GOODE

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to the State and the State Prosecuting Attorney this 22nd day of June 2015 by first class mail.

/S/_____
KEN GOODE



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00656-CR

———————————

**RONALD ROBINSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

———————————

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1036165**

———————————

## MEMORANDUM OPINION

A jury found Ronald Robinson guilty of the offense of capital murder. Because the State did not seek the death penalty, the trial court assessed Robinson's punishment at life imprisonment. On appeal, Robinson contends that

(1) the trial court erred by not giving the jury an accomplice-witness instruction in reference to certain witness testimony; and (2) he was deprived of constitutionally effective assistance of counsel. We conclude that the trial court did not err when it did not give the accomplice-witness instruction with respect to the witness that Robinson contends was an accomplice witness. We further conclude that Robinson has failed to demonstrate that ineffective representation affected the outcome of the trial. We therefore affirm.

## Background

This case arises from a cold case murder that occurred in the early 1990s. The decedent, Jimmy Sims, worked nights as a machinist, and he coached boys in a boxing club in his spare time. At some point during the 1980s, Sims met Robinson's wife, Flor, through coaching her son, Ronnie. Though both were married, Sims and Flor began an affair that lasted several years. In the late 1980s, Robinson and Sims's wife, Jeneanne, discovered the affair. After Jeneanne confronted her husband about the affair, he ended it. The couple decided to stay together and work on their marriage.

Robinson, however, reacted badly when he found out about his wife's affair with Jimmy Sims. Over the next year and a half, he threatened and stalked both of the Simses. He made belligerent phone calls to the Simses' residence. During one of these calls, Sims and Jeneanne overheard Robinson assaulting Flor in the

2

background. Robinson also wrote provocative letters, signed them with Flor's name, and sent them to the Simses. On several occasions, Jeneanne observed Robinson sitting in his van outside of the Simses' residence around the time that Sims would leave for work.

In early 1991, Robinson hid inside the Simses' garage and confronted Jeneanne. During this episode, Robinson's son Ronnie and Ronnie's friends stood outside near Robinson's van. Robinson told Jeneanne that he had brought Ronnie and his friends to "settle this once and for all." On another occasion in early 1991, Robinson went to the Simses' house and reported that Ronnie had tried to steal his gun because he wanted to "take care of Mr. Sims." A few months before Sims's murder, Robinson drove by the Sims's residence, brandishing a gun.

On September 5, 1991, at approximately 10:00p.m., Sims left his house for work. Shortly after he left, Jeneanne heard gunshots. She grabbed a pistol and ran outside. Jeneanne saw two individuals shooting at Sims and she realized that he had been shot. The individuals wore knit caps with their faces covered by bandanas. She screamed at them to leave, and they pointed their guns at her. They eventually fled westward down the street. Sims died from his injuries. The police investigated Sims's murder without immediate success.

J. Martinez testified at trial, and the jury was instructed to regard his testimony as accomplice-witness testimony. He testified that he was close friends

3

with Ronnie and another man, Bob Mason. Martinez drove Mason to meet with Robinson. Robinson wanted Mason to hurt someone who was having an affair with his wife. Mason and another friend, J. Salodiur, asked Martinez to drive them to Sims's house at the time that Sims would be leaving for work. He agreed and drove them to a park near Sims's house so that no one could identify the getaway car. Jonue Salodiur, who accompanied them, carried a long stick with him. Mason and Salodiur headed toward the Simses' residence. Martinez heard several gunshots a few minutes later. Salodiur and Mason returned to the car; Mason was holding a gun.

Greg Fuentes also testified. He knew Mason, Martinez, and Salodiur. Around the time of the murder, Mason and another man went to Fuentes's house with ski masks and gloves. They announced that they had shot someone. Fuentes refused to keep the masks and gloves. Mason also asked for help in getting rid of a gun. Fuentes then drove Mason to Robinson's house. In Fuentes's presence, Mason told Robinson: "I took care of your problem. He's dead." Robinson called to one of his children to bring him his wallet, and Robinson gave Mason some money.

K. Martinez dated Mason in the early 1990s. A couple of days after Sims's murder, Mason told her that he had shot someone, and Salodiur was with him when it happened. Mason told her that Robinson had paid Mason to kill Sims

4

because Sims had had an affair with his wife. Mason also pointed a gun at a woman who was screaming at the scene of the crime.

H. Cook, who lived near Sims's house, testified that he was outside his house at approximately 10:00 on the night of Sims's murder when he heard a woman screaming. He then observed a male running and walking intermittently, traveling westward, and looking over his shoulder, as he carried a long tube. He also observed another male following the first one and carrying something under his jacket.

I. Guerra, Robinson's co-worker, discussed Sims's murder with Robinson in 2004. Robinson told him that one of his son's friends had murdered Sims.

In 2005, the police department began to work on the cold case file again. The renewed investigation led to Robinson's indictment.

*Course of proceedings*

A jury convicted Robinson of capital murder in 2007. *Robinson v. State*, 266 S.W.3d 8, 9 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Robinson appealed, contending that the trial court erred in setting forth the applicable law in the jury charge. *Id.* Our court agreed, and we reversed and remanded the case for a new trial. *Id.* The Court of Criminal Appeals refused a petition for discretionary review. *See* Order refusing State's PDR, Case No. PD-1384-08 (Feb. 25, 2009).

On remand, the State again tried Robinson for capital murder. The jury found Robinson guilty.

## Discussion

### I. Accomplice-Witness Instruction

*Standard of Review*

We review jury charge error in a two-step process. *Ngo v. State,* 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). First, we determine whether error exists in the charge. *Id.* If it does, we review the record to determine whether the error caused sufficient harm to require reversal of the conviction. *Id.* When the defendant has not objected to the error, we will not reverse for jury-charge error unless the record demonstrates egregious harm to the defendant. *Id.* at 743–44.

*Accomplice testimony*

Under Article 38.14 of the Texas Code of Criminal Procedure, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2013). An accomplice is a person who participates in the offense before, during, or after its commission, with the requisite mental state. *Druery v. State,* 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).

An accomplice witness may be characterized as an accomplice as a matter of law or as a matter of fact. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). A trial judge has no duty to instruct a jury that a witness is an accomplice as a matter of law unless no doubt exists that the witness is an accomplice. *Druery*, 225 S.W.3d at 498. If the evidence presented is conflicting on the issue of whether a witness is an accomplice, then the trial judge should submit whether the witness is an accomplice witness as a matter of fact to the jury, defining an accomplice and instructing the jury that it must first find corroborating evidence before it considers the testimony of a witness it finds to be an accomplice. *Id.* at 498–99. To raise a fact issue and warrant an accomplice-witness instruction, some evidence must show an affirmative act on the part of the witness to assist in the commission of the charged offense. *Id.* at 499.

*Analysis*

Robinson argues that Fuentes was an accomplice to capital murder and thus the trial court erred in refusing to instruct the jury to appropriately consider corroborating evidence before relying on Fuente's testimony. We disagree, because Robinson has not shown that Fuentes committed an affirmative act in furtherance of the capital murder. To warrant such an instruction, Fuentes must have engaged in an affirmative act that promoted Sim's murder. *See Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). A witness is not an

7

accomplice simply because he knew about the commission of the offense and did not report it; nor because he helped the accused to conceal it. *Smith,* 332 S.W.3d at 439 (citing *Gamez v. State,* 737 S.W.2d 315, 322 (Tex. Crim. App. 1987)).

Robinson contends that the following testimony made some showing that Fuentes acted as an accomplice to the capital murder: (1) Fuentes was friends with Mason and Salodiur; (2) Fuentes was the leader of a gang in which Fuentes and Mason participated in committing crimes generally; (3) Fuentes drove Mason to a meeting with Robinson where Mason told Robinson that Sims was dead; (4) at the meeting, Fuentes witnessed Robinson pay Mason for committing the murder; (5) Fuentes and Mason both routinely carried guns; (6) Fuentes helped Mason leave the country to avoid the police; (7) Mason stayed at Fuentes's residence after he returned to the country; (8) Mason and another man came to Fuentes's residence with ski masks, gloves, and guns and stated that they had shot someone; (9) Fuentes helped Mason get rid of the murder weapon, knowing Mason had shot someone; (10) Fuentes traveled with Mason to attempt a murder of another person; and (11) Fuentes testified he had been convicted of a different attempted murder.

Fact issues 1, 2, 5, 10, and 11 concern activity wholly separate from the offense in this case. To be an accomplice, one must have engaged in an affirmative act promoting the offense at issue, not a different crime. *See Paredes,* 129 S.W.3d at 536. Fact issues 3, 4, 6, 7, 8 and 9 demonstrate Fuentes's

8

knowledge of Mason's murder of Sims and his understanding that Robinson was involved, but a witness is not an accomplice simply because of his knowledge of the offense, even if he does not report the offense or helps to conceal the offense. *See Smith*, 332 S.W.3d at 439. In particular, Fuente's assistance in disposing of a weapon after a crime does not make him an accomplice witness to the crime without evidence of an affirmative act promoting the commission of the murder. Here, there is no such evidence. *See Druery*, 225 S.W.3d at 500 ("[W]e have previously held that merely assisting after the fact in the disposal of a body does not transform a witness into an accomplice witness in a prosecution for murder. The witness must still be susceptible to prosecution for the murder itself by having affirmatively assisted in committing the offense. The same logic applies to assisting [the defendant] in disposing of the gun after the murder; the fact that [the witness] did so does not make him an accomplice witness to the capital murder.").

We hold that the trial court did not err in refusing to instruct the jury to consider whether Fuentes was an accomplice as a matter of fact. *See id.*

## II. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) his counsel's performance was deficient; and (2) a reasonable probability exists that the result of the proceeding would have been different.

9

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Trial counsel in this case was retained rather than appointed, but the *Strickland* test applies to retained, as well as appointed, counsel. *See Ex parte Briggs*, 187 S.W.3d 458, 469 (Tex. Crim. App. 2005) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344-45, 100 S. Ct. 1708, 1716 (1980)) ("[W]e see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers.").

The first prong of the *Strickland* test requires the defendant to show that counsel's performance fell below an objective standard of reasonableness; in that counsel made such serious errors that he was not functioning effectively as counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Lopez*, 343 S.W.3d at 142. Thus, the defendant must prove objectively, by a preponderance of the evidence, that his counsel's representation fell below professional standards. *Lopez*, 343 S.W.3d at 142; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). We indulge a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, and the appellant must overcome the presumption that the challenged action might be sound trial strategy. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). When direct evidence is not available,

we will assume that counsel's strategy was reasonable if any reasonably sound strategy can be imagined. *Lopez*, 343 S.W.3d at 143; *see also Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007).

*Strickland's* second prong requires the defendant to show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Lopez*, 343 S.W.3d at 142. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986)). We consider whether the defendant has shown by a preponderance of the evidence that counsel's actions "so compromised the proper functioning of the adversarial process that the trial court cannot be said to have produced a reliable result." *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (citing *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2064)).

*Analysis*

Robinson contends that his trial counsel was ineffective because he elicited testimony from a police witness that Mason is serving a life sentence for Sims's murder, and because he failed to object to the State's questions that clarified on redirect that Mason's conviction was for the capital murder for hire and that Robinson had hired Mason. On redirect, the witness testified:

11

Counsel: I believe that you were asked on cross-examination about that Bob Mason is currently serving a life sentence for this case, right?

Fikaris: Yes, sir.

Counsel: And he is serving a life sentence for this case, right?

Fikaris: That's correct.

Counsel: And when you charged him with capital murder, was the aggravating factor in the charges you filed that he committed murder-for-hire by Ronald Robinson?

Fikaris: Yes, sir.

Counsel: And that's what he was convicted of?

Fikaris: That's correct.

Robinson cites *Ex parte Hill* to argue that if defense counsel opens the door to evidence of a co-defendant's conviction for the same offense, counsel was ineffective, and the defendant should be given a new trial. *See Ex parte Hill*, 863 S.W.2d 488 (Tex. Crim. App. 1993). In *Hill*, defense counsel proffered the co-defendant as an alibi witness and opened the door to the State's introduction of evidence of the witness's guilty plea, undermining the alibi of his client. *Id.* at 489.

In this case, Mason was not an alibi witness. Defense counsel instead elicited testimony from a police witness that Mason was a gang member, had an extensive criminal record, and was in prison for a violent crime; thus, his statements implicating Robinson were not trustworthy. Defense counsel could

12

have introduced evidence of Mason's conviction as part of a reasonable trial strategy to demonstrate that Mason was not credible and attempted to implicate Robinson during his own trial. *See Heiman v. State*, 923 S.W.2d 622, 626–27 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding that failure to object to inadmissible testimony about extraneous offenses could have been trial strategy demonstrating victim's lack of credibility). Assuming without deciding that counsel erred in eliciting the testimony that Mason was convicted because Robinson hired him to murder Sims, Robinson fails to show that the outcome of the proceeding would have been different had his counsel not elicited testimony about Mason's fate. The State proffered abundant evidence of Robinson's guilt, including Robinson's threatening behavior toward Sims and Jeneanne, his presence in front of the Simses' house in the evenings before Sims left for work, J. Martinez's testimony about Mason's meeting with Robinson, Fuentes's testimony that Robinson had paid Mason to kill someone, and K. Martinez's testimony that Robinson paid Mason to kill Sims because of Sims's affair with Robinson's wife.

We conclude that Robinson has failed to meet the second prong of *Strickland*. *See Ex parte Martinez*, 330 S.W.3d 891, 904 (Tex. Crim. App. 2011) ("It is unlikely, in the face of all the evidence with which the jury was presented, that the jury would have reached a different conclusion in the absence of the gang-related evidence.").

13

Because Robinson has failed to show a reasonable probability that, but for counsel's actions, the result of the proceeding would have been different, we hold that Robinson has failed to satisfy the second prong of an ineffective assistance claim. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Lopez*, 343 S.W.3d at 142.

## Conclusion

We hold that the trial court did not err in not giving the jury an accomplice-witness instruction with respect to Fuentes's testimony. We further hold that Robinson has not shown that he received ineffective assistance of counsel at trial. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. *See* TEX. R. APP. P. 47.2(b).